Buzbee v. Buzbee 









[WITHDRAWN 2-9-94]





IN THE
TENTH COURT OF APPEALS
 

No. 10-93-086-CV

     KATHERINE DENISE BUZBEE,
                                                                                              Appellant
     v.

     JAMES EARL BUZBEE,
                                                                                              Appellee
 

From the County Court at Law
Johnson County, Texas
Trial Court # D88-00460
                                                                                                    

O P I N I O N
                                                                                                    

      The Attorney General brings this appeal on behalf of Katherine Buzbee Adams (Adams),
complaining of the court's calculation of the child-support arrearage of her exhusband, James
Buzbee. In the first and second points of error, the Attorney General claims that the evidence is
legally and factually insufficient to support the court's calculation. In the third point, the Attorney
General complains of the court's failure to file additional findings of fact and conclusions of law
after being properly requested to do so. We will reverse and render.
      After reviewing the record, we concluded that the court's failure to file the requested
additional findings of facts and conclusions of law prevented the proper presentation of this cause
to this court. Therefore, in a per curiam order, we abated this appeal and remanded the cause to
the trial court with instructions to enter additional findings of facts and conclusions of law in
support of the judgment. Those additional findings and conclusions have now been forwarded to
this court in a supplemental transcript, and we shall proceed with the appeal as if the error in
failing to file the additional findings and conclusions had not occurred. See Tex. R. App. P. 81(a) 
      Adams and Buzbee were divorced in January 1989. Buzbee was ordered to pay $60 a week
in child support through the registry of the court, beginning on January 13, 1989. In April 1992
the Attorney General moved to enforce Buzbee's child-support obligations, later amending the
motion for enforcement to update the arrearages through May 31, 1992. The court heard the
motion on July 17, 1992.
      At the hearing the court took judicial notice of the 1989 divorce decree and admitted into
evidence the child-support registry payment record. Of the $10,560 in child support that was
owed between January 13, 1989, and May 31, 1992, Buzbee had paid $6,025.30 through the
court's registry. 
      Buzbee testified that he also had made direct payments to Adams of "maybe 12, $1400," and
that he had paid her $100 every two weeks on average. He also testified that he had possession
of the child for 50% of the time for five months in late 1989. Buzbee testified later that the period
of equal possession was from September 1989 through the spring of 1990. Adams testified that
Buzbee had made direct payments of $450 and that the total arrearages was $4,144.70, but she
denied that he had possession of the child for half of the time during any period. 
      At the close of the hearing the judge took the motion to enforce under advisement. In a
judgment dated March 12, 1993, the court stated:
THE COURT FINDS and confirms that Obligor is in arrears in the making of payments
as previously ordered in the total sum of $2,204.00, as of July 17, 1992, which
represents all prior unpaid child support whether or not previously confirmed, and does
not reflect any sums paid on the hearing date or since May 27, 1992. On May 27, 1992
child support was set at $43.38 per week ($188.00 per month). Through September 12,
1992, James Buzbee was paying $76.35 per week. He is entitled to 16 weeks credit on
the $2,204.00 of $32.97 per week for a credit of $527.52, leaving a balance on the
$2,204.00 of $1,676.48. Since September 12, 1992 through December 30, 1992, James
Buzbee paid $47.00 per week, an excess of $3.62 per week, for a credit of $57.92,
leaving a balance on the arrearage of $1,618.36.
IT IS THEREFORE ORDERED that judgment in the amount of $1,618.36, is granted
against JAMES EARL BUZBEE in favor of the Attorney General of Texas as child
support for collection and distribution in accordance with law, for which let execution
issue.
In the space between the two paragraphs was handwritten "Balance $1,911.18 as of Sept. 15,
1992," and the $1,618.36 amount in the second paragraph was lined out and replaced by a
handwritten "$1911.18." The final page of the judgment was also altered by hand to replace
$1,618.36 with $1,911.18. All of these interlineations were apparently initialled by counsel for
the parties. Thus, the final judgment of the court was that Buzbee was $2204 in arrears on his
child-support obligation, which was to be offset by $292.22 in overpayments made after the date
of the hearing.
      In response to the Attorney General's request, the court issued its "Findings of Fact and
Conclusions of Law." The court found that "the arrearage in child support as of September 15,
1992 was $1,911.18." The Attorney General requested additional findings of fact and conclusions
of law. The court's additional findings and conclusions included these:
   (2)      Mr. Buzbee made direct payments to Mrs. [Buzbee] of $1400.00.
   (3)      Mr. Buzbee supported the minor child for one half of the time for seven months
beginning in September 1989.
   (4)      Mr. Buzbee is entitled to a credit of $945.00 for supporting the minor child for one half
of the time for the [seven] month period.
   (5)      Mr. Buzbee between May 27, 1992 and September 15, 1992 paid child support in the
amount of more than $60.00 per week (the previous child support amount) when he was
required to pay $43.88 per week. Mr. Buzbee is entitled to a credit on the arrearage of
$193.44 for this overpayment for twelve weeks.
   (7)      Given credits of $2,538.44 the arrearage of Mr. Buzbee was $1,756.26 on September 15,
1992 and not $1,911.18 (the amount in the order appealed).
   (8)      If you allow the credits on overpayment only from June 23, 1992 (the date the Attorney
General claimed the arrearage was $4,294.70) [through] September 15, 1992, then the
credit for payment of the arrearage by paying $60.00 instead of $43.88 would be
$128.96, making the arrearage of September 15, 1992 $1,820.74.
   (12)    Taking the figure most favorable to Mr. Buzbee, $1,756.26, and the figure most
favorable to the Attorney General and Ms. Buzbee, $2,070.74, one half of the difference
would be $157.24, which is within $2 of the child support arrearage found by the court
on September 15, 1992 - $1,911.18.
   (13)    In other words, accepting the arrearage to be $4,469.70, splitting the difference between
what the Attorney General said the arrearage was ($4,544.70) and what Ms. Adams
(Mrs. Buzbee) claimed the arrearage to be ($4,294.70), the arrearage is $1,913.40.
   (15)    Mr. Buzbee is entitled to credit for child support payments made directly to a former
spouse.
   (17)    Mr. Buzbee is entitled to "actual support" for a period of approximately seven months
as an offset against the claim of Ms. Adams (Ms. Buzbee) and the Attorney General.
   (20)    On June 23, 1992 the Attorney General claimed the arrearage to be $4,294.70; on July
17, 1992 Exhibits 1 & 2 showed an arrearage of $4,774.70; Ms. Adams testified that the
arrearage was $4,544.70 with no credits; the Court finds the arrearage to be $4,537.70
before any credits; Mr. Buzbee is entitled to a credit of $1,400.00 for direct payments;
a credit of $945.00 for supporting the child one-half of the time for seven months when
Mrs. Buzbee was responsible for that support; and twelve payments of $16.12 of
overpayment, which is a credit of $193.44; leaving an arrearage as of September 15,
1992 of $1,949.26; the Court further finds that the Attorney General initialed the Order
of March 12, 1993, and a mistake of $38.08 is de minimis, being less than 1% of the
claimed arrearage.
   (21)    The Court finds the arrearage to be $4,294.70 on June 23, 1992 (the Attorney General's
allegation); Mr. Buzbee is entitled to a credit of $1,400.00 for direct payments; a credit
of $945.00 for additional support; and eight weeks (from June 23, 1992 to September 15,
1992) of $16.12 per week overpayments, being $128.96; arrearage of Mr. Buzbee was
$1,820.76 as of September 15, 1992; the Court made an error of $90.42 in favor of Mrs.
Buzbee and the Attorney General.
      The Attorney General attacks the legal and factual sufficiency of the evidence to support the
court's calculation of the child-support arrearage. The first question that confronts us is
determining the correct standard of review. The factual findings are reviewed under the same
standards applied to the sufficiency of the evidence to support a jury's findings. Anderson v. City
of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991). To properly determine the standard to be
applied, we must allocate the burden of proof between the parties on the relevant issues.
      Prior to the 1993 amendments, section 14.41 of the Texas Family Code, in relevant part,
provided:
(a)Judgment for Arrearages. . . . On the motion of an obligee or obligor, after notice and
hearing, the court shall confirm the amount of chid support in arrears and shall render
judgment against an obligor for any amount of child support unpaid and owing . . . . The
judgment rendered by the court may be subject to a counterclaim or offset as provided by
Subsection (c) of this section. . . .
. . . 
(c)Possession of Child by Obligor. . . . [A]n obligor who has provided actual support to the
child during [periods of possession in excess of the court-ordered periods of possession] may
seek reimbursement for that support as a counterclaim or offset against the claim of the
managing conservator. . . .
(d) Retroactive Modification. The court may not reduce or modify the amount of child
support arrearages in rendering judgment under this section.
Tex. Fam. Code Ann. § 14.41 (Vernon Supp. 1994).
      By the plain language of the statute, the plaintiff in the action has the burden of proving the
dollar amount of the difference between payments made and the payments required by the terms
of a child-support order. The obligor then has the burden of establishing any amounts claimed as
an offset against the arrearage. Under section 14.41(c), the amount of offset is limited to the
amount of "actual support" during periods of "excess" possession. Therefore, the Attorney
General had the initial burden of establishing the amount of Buzbee's child-support arrearage. 
After this amount is established, Buzbee had the burden of establishing "excess" possession and
the amount of "actual support." 
      With the burdens of proof allocated, we can proceed to the issue of the appropriate standard
of review for the Attorney General's legal- and factual-insufficiency challenges. When both
"legally insufficient evidence" and "factually insufficient evidence" points are raised, the appellate
court addresses the "legally insufficient evidence" point first. See Glover v. Texas Gen. Indem.
Co., 619 S.W.2d 400, 401 (Tex. 1981). The standards of review we utilize are drawn from the
standards applied to jury findings. See Anderson, 806 S.W.2d at 794. 
      Because the Attorney General is attacking an adverse fact-finding on an issue upon which he
had the burden of proof under a legally-insufficient evidence theory, his burden on appeal is to
demonstrate that the record establishes the amount of the arrearage as a matter of law. See Sterner
v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989). Thus, the Attorney General must
surmount two hurdles. First, the record must be examined to determine if there is any evidence
to support the adverse fact finding, ignoring all evidence to the contrary. Id. Second, if the
factual finding fails the no-evidence test, the entire record must be examined to determine if the
contrary position has been established as a matter of law. Id. 
      The January 1989 divorce decree set the child-support payments at $60 a week. By
multiplying the support obligation by the number of weeks between the divorce and May 31, 1992
($60 per week x 176 weeks), the court could calculate as a matter of law Buzbee's total support
obligation at $10,560. Consulting the court's child-support registry, the judge could also find that
Buzbee had paid $6025.30 through the registry. The difference between these two figures
establishes an arrearage of $4534.70. 
      Although Buzbee was ordered to pay child support through the court-registry, the court was
not limited to the registry record in determining how much child support Buzbee had actually paid. 
See Niles v. Rothwell, 793 S.W.2d 77, 79 (Tex. App.—Eastland 1990, no writ). The court also
found that Buzbee had paid $1400 directly to Adams. This figure is supported by Buzbee's
testimony. 
      The Attorney General argues that Buzbee's testimony is no more than a mere scintilla of
evidence and so is effectively "no evidence" to support the conclusion that Buzbee paid $1400
directly to Adams. "When the evidence offered to prove a vital fact is so weak as to do no more
than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla
and, in legal effect, is no evidence. . . . The test for the application of this no evidence/scintilla
rule is that if reasonable minds cannot differ from the conclusion that the evidence offered to
support the existence of a vital fact lacks probative force, it will be held to be the legal equivalent
of no evidence. However, there is some evidence, more than a scintilla, if the evidence furnishes
some reasonable basis for differing conclusions by reasonable minds as to the existence of the vital
fact." Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983). 
      That Buzbee made direct payments to Adams is not disputed, only the amount of the direct
payments. Adams testified to one figure, while Buzbee testified to another. This conflict is
simply a credibility contest between the two witnesses. Resolution of credibility conflicts is within
the domain of the finder of fact; thus, the court was entitled to believe Buzbee and disbelieve
Adams. See McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). The resolution of the
credibility issue in favor of Buzbee provides a reasonable basis for the court's ruling. Thus,
Buzbee's testimony is more than a mere scintilla of evidence and is sufficient to support the court's
finding that he paid $1400 directly to Adams. 
      Reducing Buzbee's total obligation by the amount paid through the court registry and by direct
payment ($10,560 - $6,025.30 - $1,400) results in an arrearage of $3134.70 as of May 31, 1992.
      In its additional findings and conclusions, the court alternatively found the arrearage to be
$1,756.26 (finding 7), $1,820.74 (finding 8), $1,913.40 (finding 13), $4,537.70 (finding 20), and
$4,294.70 (finding 21). Of these, we construe findings 7, 8, and 13 to be conclusions of law and
we construe findings 20 and 21 to be factual findings. When there is a conflict between the fact
findings and the legal conclusions made by the trial court, the factual findings prevail over that
court's legal conclusions. See Gary Safe Co. v. A.C. Andrews Co., Inc., 568 S.W.2d 166, 168
(Tex. Civ. App.—Dallas 1978, writ ref'd n.r.e.). Thus, under the additional findings of fact, the
court found that the amount of the initial arrearage was either $4,537.70 or $4,294.70.
      We conclude that the trial court's calculation of Buzbee's child-support arrearage as reflected
in the court's additional findings of facts is not supported by any evidence in the record. 
      Next, we must determine if the evidence established the correct amount of Buzbee's child-support arrearage as a matter of law. See Sterner, 767 S.W.2d at 690. The Attorney General
argues that the correct figure is $4,144.70 or, at the least, $3,194.70. Section 14.41(a) merely
directs the court to "confirm" the amount of child-support arrearage. See Tex. Fam. Code Ann.
§ 14.41(a). "Under its provisions, the trial court has no independent authority to reduce or modify
the amount of child support arrearage . . . the judge here acts as a mere scrivener" Williams v.
Patton, 821 S.W.2d 141, 153 (Tex. 1991) (Phillips, C.J., dissenting); Lewis v. Lewis, 853 S.W.2d
850, 854 (Tex. App.—Houston [14th Dist.] 1993, no writ). Only after the arrearage is confirmed
can the judge reduce the amount of the judgment to reflect offsets and counterclaims for actual
support. Tex. Fam. Code Ann. § 14.41(a); Williams, 821 S.W.2d at 153; Lewis, 853 S.W.2d
at 854. Thus, the arrearage calculation under section 14.41(a) concerns only the monies paid by
the obligor to the obligee. It is strictly an arithmetic procedure: What the obligor owes less what
the obligor has paid. The record in this case contains all of the required facts to make this
determination as a matter of law.
      The undisputed evidence establishes that Buzbee owed $10,560. The amount that Buzbee paid
has two components. First, undisputed evidence shows that he paid $6,025.30 through the court's
registry. The second component involves monies paid outside the registry. The relevant factual
findings of the court are those labeled (2) and (15) above. In these findings, the court found that
Buzbee paid $1400 directly to Adams outside the court registry. These findings are sufficient to
establish that the child-support arrearage was $3,134.70 as a matter of law. Point one is sustained.
      Generally, when we sustain a matter-of-law point, we must render judgment for the prevailing
party. See Vista Chevrolet, Inc. v. Lewis, 709 S.W.2d 176 (Tex. 1986). The record must be
sufficient for us to calculate the amount of the judgment that the party is entitled to receive. We
conclude that the child-support arrearage as of May 31, 1992, is $3,134.70.
      The trial court found that Buzbee had provided "actual support" to the minor for seven months
beginning in September 1989. The value of this actual support found by the court is $945. 
      Section 14.41(c) of the Family Code provides for an offset against the child-support arrearage
for funds expended as actual support during periods of excess possession. By the plain language
of the statute, the party claiming the benefit of the section must prove (1) that he had possession
of the child for periods in excess of the court-ordered periods of possession (2) during which he
incurred expenses for actual support of the child. Thus, to gain a credit against the arrearage,
Buzbee was required to provide the court with some evidence of his expenditures on the child. 
See Lewis, 853 S.W.2d at 855 (without expenditure evidence court is unable to consider offset
claim); Rinehold v. Rinehold, 790 S.W.2d 404, 406 (Tex. App.—Houston [14th Dist.] 1990, no
writ) (evidence of total household expenses supported judgment). There is no evidence in the
record regarding the amounts that Buzbee actually spent in support of the child during the period
of claimed excess possession. Thus, the court's finding that Buzbee is entitled to a $945 credit
against the arrearage is not supported by any evidence, and Buzbee is not entitled to the $945
credit.
      The trial court also found that Buzbee was entitled to an offset for overpayments of either
$193.44 (finding 5) or $128.96 (finding 8). Both of these figure include payments made after the
July 17 hearing. There is no evidence in the record to support the finding of these payments or
their amounts. Thus, Buzbee is not entitled to credits for overpayments made after the hearing
against the judgment to be rendered. However, we are not holding that he is not entitled to have
any overpayment credited against the amount owed based on evidence presented at a future
hearing. 
      Having sustained point one, the judgment of the trial court is reversed. We confirm Buzbee's
child-support arrearage as of May 31, 1992, in the amount of $3,134.70 and render judgment for
the Attorney General against James Earl Buzbee in that amount.
 
 
                                                                                 BOB L. THOMAS
                                                                                 Chief Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Reversed and rendered
Opinion delivered and filed January 26, 1994
Publish
[WITHDRAWN BY ORDER 2-9-94]