**Dana S. CURTIS, Appellant,**

v.

**William Charles CURTIS, Jr., Appellee.**

**No. 12–99–00065–CV.**

Court of Appeals of Texas,
Tyler.

Jan. 31, 2000.

Rehearing Overruled March 2, 2000.

Jimmy C. Minter, Fort Worth, for appellant.

Joe E. Shumate, Henderson, for appellee William Charles Curtis, Jr.

John Cornyn, Andy Taylor, Rhonda Amkraut-Pressly, John B. Worley, Austin, for appellee Office of Attorney General of Texas.

1. Although the Office of the Attorney General of Texas ("attorney general") filed an appellee's brief in this appeal, the attorney general was aligned with Appellant's interests both at trial and on appeal. Since under Tex. R. App. P.3.1(c), an appellee is "a party adverse to an appellant," the attorney general cannot properly be characterized as an appellee. For this reason, the Office of the Attorney General of Texas has not been listed as a party to this appeal.

Panel consisted of RAMEY, Jr., C.J., HADDEN, J., and WORTHEN, J.

JIM WORTHEN, Justice.

This is an appeal from the trial court's Judgment for Child Support Arrearage. In three points of error, Appellant Dana S. Curtis ("Dana") complains that the trial court incorrectly calculated the amount of the arrearage and interest owed to her by Appellee, William Charles Curtis, Jr. ("William").[1] Because Dana's second point, which challenges the legal sufficiency of the evidence, is dispositive of the case, we will address it first, then reverse and remand for a new trial.

## BACKGROUND

Dana and William were divorced on November 19, 1982. At the time of divorce, there were two children of the marriage, April and Michael. Pursuant to the parties' agreement, Dana was appointed managing conservatorship of both children, and William was ordered to pay child support in the amount of $276.00 per month in two installments, $124.00 on the first of each month and $152.00 on the fifteenth of each month. Child support obligations were to begin on December 1, 1982, and were to continue "until any child herein reaches the age of 18 years or is otherwise emancipated." Thereafter, William was to pay Dana $138.00 per month on the first of each month until the next child reached the age of eighteen or was emancipated. The decree, however, also provided as follows:

In the event the real property described below [the family residence] is sold pursuant to this decree or by agreement of the parties, Petitioner is ordered to pay to Respondent child support in the

amount of $400.00 per month in two installments of $200.00 each with the first of said installments to commence on the first day of the month following the closing of the sale of the residence, and the second installment to be paid on the 15th day of that month; and like and similar installments on the 1st and 15th days of each month thereafter until any child reaches the age of 18 or is otherwise emancipated. Thereafter, Petitioner shall pay to Respondent child support in the sum of $200.00 per month in one installment being due and payable on the 1st of each month until the next child reaches the age of 18 or is otherwise emancipated.

On September 12, 1996, the Attorney General of Texas filed a motion to reduce unpaid child support to judgment. Thereafter, on September 27, 1996, Dana filed a "Cross–Petition of Dana S. Curtis to Motion to Reduce Unpaid Child Support to Judgment." Therein, she incorporated the attorney general's motion by reference.

On June 12, 1997, the trial court heard Dana's cross-petition. At that hearing, the following evidence was adduced. Dana testified that April was born on May 9, 1972, and Michael was born on July 29, 1975.[2] The property referenced in the divorce decree referred to the parties residence at 153 Pecan Circle in Athens, Texas. Dana stated that although they had agreed to sell the residence, it was foreclosed upon before they could sell it. She further moved from the residence on July 29, 1983, several months before the foreclosure. When asked how much child support she had received from William since the time of the divorce, Dana replied that she had received approximately $1,000.00. According to Dana, on April 27, 1993, she signed a paper with the Attorney General's office to say that they were going to sue William for back child support. At that time, April was already over the age of

eighteen, and Michael was nearly eighteen. She further stated that April moved in with William in 1987, when she was age fourteen, and she lived with him for three-and-a -half years until she reached her eighteenth birthday. Dana also testified that there had been no modifications in child support payment under the decree. She, however, stated that while she thought there had been an order requiring him to make his child support payments through the court, she did not have such an order in her possession. When asked whether she had kept records of the payments she had received from William, Dana stated that although she had sometimes written down the payments she had received from William, her notes were "long gone." Thus, she stated that all she could remember being paid was an amount of about $1,000.00. She, however, stated that William did pay for one and maybe two medical procedures for the children.

On cross-examination, Dana identified her endorsement on the back of eight checks written to her by William, which totaled $807.00. She, however, testified that she did not remember getting any of these checks. She further stated that she remembered getting no cashier's checks. She, however, stated that occasionally, after they were first divorced, she would receive some cash payments from William. Dana testified that she remembered receiving a check from him in December of 1983 which was not one of the eight checks previously identified. Further, she testified that occasionally William would pay some of her utility bills; however "He didn't pay very much. Very many times."

William testified that there had been no modifications in child support, and that the divorce decree specified that he was to make his support payments directly to Dana. He further stated that the divorce decree did not specify the manner in which he was to make the payments; thus, it did

---

**2.** Both the Divorce Petition and Divorce Decree, however, state that April was born on May 9, 1973.

not require payment by check. William further testified that he had made all of his child support payments to Dana. He further stated that he and his current wife had kept a systematic record of his payments to Dana since the time of his divorce until his obligations under the decree ceased. William stated that these records consisted of canceled checks, notations on calendars and receipts for money orders. Additionally, he stated that he had kept a running record of these payments. William stated that according to his records, he had paid Dana a total of $20,313.92. He further stated that according to his calculations, he should have paid her $18,213.92; thus, he said that Dana had received approximately $2,000.00 in overpayments. William further testified that he had primary care, custody and control of his daughter April from January 18, 1987, until June of 1990, when she went away to Ranger Junior College. William stated that he stopped paying child support for both children in January of 1997. He, however, stated that he sent Dana "additional money" through April of 1988 to help pay for Michael's expenses. He then testified that in April of 1988, they agreed that she would take care of Michael's expenses and he would take care of April's expenses. Thus, William paid his last child support for Michael in April of 1988. William further testified that Michael moved out of Dana's home in September of 1992 and attended the Gary Job Corp.

William testified that he had brought with him the following records: canceled checks totaling $4,963.00; money order receipts or photocopies totaling $800.00; check registers totaling $3,957.68; one-half of a house payment totaling $1,984.00; and cash payments totaling $6,507.32. William testified that in addition to child support payments, he also made utility payments for Dana when she was in a financial bind. With regard to foreclosure on the residence, William stated that he paid half of the house payments until April of 1984, then he testified that "I let the original owner foreclose and repossess it ... the

payments were going to go up, insurance was going to go up, and Dana was—said she needed more money. And we were in a financial bind ourselves so the only logical thing was to go ahead and let it go."

After a brief recess, Dana stated that she would stipulate to having received $4,897.00 in checks from William. Moreover, the court admitted without objection William's check registers reflecting additional child support payments. William testified that many of his canceled checks had been stored in their attic and were destroyed when their house burned in 1988. Some of his other canceled checks were stored in a storage building and were destroyed by rodents. William also testified that Dana had informed him that she preferred not to be paid through the registry of the court because it took too long to get the money. She further informed William that she preferred him to pay her in cash.

William stated that he did not know Dana had a problem with the child support until she brought the instant action against him. He further stated that the Attorney General's office informed him that it was going to put a notation in his credit file that he owed $32,000.00 in back child support. William further stated that they followed through with their threat and as a consequence, he cannot get credit. When asked what the Attorney General's office based its claim on, he stated that they had looked only to what had been paid through the registry of the court in the clerk's office in Henderson County, Texas.

On rebuttal, Dana testified that she had only received cash from William on two or three occasions. She further stated that it was never "too much more than a hundred dollars at a time." She then admitted that although she had initially stated William had given her no more than $1,000.00 over the years, since that statement, she had already stipulated that she had endorsed more than $4,000.00 in checks. William's attorney then showed her a letter reflect-

ing that she had written William's wife about the fact that she and William needed to handle April's medical bills. The letter also stated that "we all agreed that ya'll would get Aprils bills if I got Mikes." Dana, however, clarified that the statement in that letter referred to the children's medical bills. With regard to records of deposits or checks, Dana stated that she had no such records because she seldom had a checking account over the eleven-year period at issue.

Following this testimony, the trial court made the following pronouncement: "I find the Respondent in arrears a total of $7,600.00 plus interest dating from the first payment being due June 1st, 1990. I'll grant a judgment for that amount plus interest." The court thereafter made the following findings of fact and conclusions of law in support of its holding:

1. That this Court has jurisdiction of all the parties and subject matter thereof.

2. That Dana S. Curtis is Movant and she appeared in person and by attorney and announced ready for hearing and that William C. Curtis, Jr. is Respondent and he appeared in person by attorney and announced ready for hearing.

3. That hearing was had on the Motion to Confirm child support arrearage filed on behalf of Dana S. Curtis on the 12th day of June, 1997.

4. That the Court heard evidence in this cause and finds that Respondent was Ordered to make periodic payments of child support in the Decree of Divorce in the 173rd Judicial District Court; Cause Number 82A–570; styled in the Matter of the Marriage of William Charles Curtis, Jr. and Dana Sue Smith Curtis and In The Interest of April Joy Curtis and Michael Dan Curtis, Children.

5. The Court finds that both April Joy Curtis and Michael Dan Curtis have become emancipated.

6. The Court finds that certain child support payments were made and that credit shall be given to William Charles Curtis, Jr. for such payments that were made.

7. The Court finds that certain child support payments that were Ordered to be paid have not been paid.

8. The Court finds and confirms that after all just and lawful offsets and credits have been made that William Charles Curtis, Jr. is in arrears in the amount of $7,600.00.

9. The Court finds that pre-judgment interest has accrued beginning on June 7, 1997, at the rate of 12% per annum.

10. The Court finds that reasonable and necessary attorneys fees in the amount of $600.00 should be assessed against William Charles Curtis Jr. and that all costs in this proceeding shall be assessed one half against Dana S. Curtis and one half against William C. Curtis Jr.

11. The Court further finds that the attorneys fee awarded in this cause is fair, just and equitable, reasonable, and necessary.

12. The Court further finds that income withholding shall issue to any employer of William C. Curtis Jr.

13. The Court further finds that a judgment shall be granted in favor of Dana S. Curtis and against William C. Curtis Jr. for the arrearage amount plus accrued interest.

14. The Court further finds that in connection with the Withholding Order that payments in the amount of two hundred dollars ($200.00) per month shall be withheld from the disposable income of William C. Curtis Jr. and paid over to the Office Of The Attorney General of Texas in order to discharge the arrearage plus all accrued interest heretofore Ordered in this cause.

15. The Court further makes any and all other implied findings of fact and of law which may be necessary to effect the Court's judgment, order, and decree in this cause.

### APPLICABLE LAW

The payment of child support arrearage compensates for the wrong to the child at least as much as it reimburses the custodial parent for monies spent on the child. Past due child support is properly characterized as an unfulfilled duty to the child rather than a debt to the custodial parent. *Williams v. Patton*, 821 S.W.2d 141, 145 (Tex.1991). The trial court does not have discretion to increase or reduce the arrearage or the interest. TEX. FAM. CODE. ANN. § 157.262 (Vernon 1996);[3] *Williams*, 821 S.W.2d at 145. Section 157.262 provides:

(a) In a contempt proceeding or in rendering a money judgment, the court may not reduce or modify the amount of child support arrearages.

(b) The money judgment for arrearages rendered by the court may be subject to a counterclaim or offset as provided by this subchapter.

TEX. FAM.CODE ANN. § 157.262 (Vernon 1996).[4] Courts interpreting this section have consistently held that while the amount of arrearages is subject to a counterclaim for offset, the trial court has no authority to reduce or modify the amount of arrearages in rendering judgment. *In Matter of Marriage of Vogel*, 885 S.W.2d 648, 651 (Tex.App.—Amarillo 1994, writ denied); *Attorney General v. Besaw*, 877 S.W.2d 32, 35 (Tex.App.—Beaumont 1994, no writ). It has been said that the trial court acts as "a mere scrivener" who mechanically tallies the amount of arrearages. *Lewis v. Lewis* 853 S.W.2d 850, 854 (Tex. App.—Houston [14th Dist.] 1993, no writ)

*citing Williams v. Patton*, 821 S.W.2d 141, 153 (Tex.1991)(Phillips C.J. dissenting). In fact, even parents of the child may not settle child support claims until after the arrearages have been confirmed and cumulated in a money judgment or until the trial court has lost jurisdiction to enforce the unpaid child support debt. *Williams*, 821 S.W.2d at 146.

Here, Dana's second point of error attacks the legal sufficiency of the trial court's finding that the amount of the arrearage after offsets is $7,600 plus interest dating from June 1, 1990. As explained by former Chief Justice Thomas in *Buzbee v. Buzbee*, 870 S.W.2d 335, 338 (Tex.App.— Waco 1994, no pet.), before we can determine the appropriate standard of review to be applied to this case, we must first allocate the burden of proof between the parties on the relevant issues. Section 157.263 provides:

(a) If a motion for enforcement of child support requests a money judgment for arrearages, the court shall confirm the amount of arrearages and render one cumulative judgment.

(b) A cumulative money judgment includes:

(1) unpaid child support not previously confirmed;

(2) the balance owed on previously confirmed arrearages or lump sum or retroactive support judgments

(3) interest on the arrearages; and

(4) a statement that it is a cumulative judgment

TEX. FAM.CODE ANN. § 157.262 (Vernon 1996). As noted above, section 157.262 prohibits the reduction of a child support arrearage except by offset or counterclaim. Section 157.008 then provides the method

---

**3.** Unless otherwise specified, all further section number references in this opinion shall be to the edition of the Texas Family Code Annotated in effect at the time the cause was tried.

**4.** Formerly TEX. FAM.CODE ANN. § 14.41(d) Acts 1985, 69th Leg., ch. 232, § 9, *repealed and added by* Acts 1995, 74th Leg., ch. 20, eff. April 20, 1995 as TEX. FAM.CODE ANN. § 157.262.

for obtaining an offset against child support arrearages:

(a) An obligor may plead as an affirmative defense in whole or in part to a motion for enforcement of child support that the obligee voluntarily relinquished to the obligor actual possession and control of a child.

(b) The voluntary relinquishment must have been for a time period in excess of any court-ordered periods of possession of and access to the child and actual support must have been supplied by the obligor.

. . .

(d) An obligor who has provided actual support to the child during a time subject to an affirmative defense under this section may request reimbursement for that support as a counterclaim or offset against the claim of the obligee.

(e) An action against the obligee for support supplied to a child is limited to the amount of periodic payments previously ordered by the court.

Under these statutory provisions, Dana had the burden of establishing the arrearage, *i.e.*, the difference between the payments made by William and the payments required under the divorce decree. Thereafter, William had the burden of establishing "excess possession" and any amount of "actual support" during periods of excess possession. TEX. FAM.CODE ANN. § 157.008(b); *Buzbee*, 870 S.W.2d at 339.[5]

■ Because Dana is attacking the legal sufficiency of the evidence to support a fact-finding upon which she had the burden of proof, as to the total arrearage, it is her burden to show that the record establishes the amount of the arrearage as a

matter of law. In so doing, she must overcome two hurdles: (1) the record must first show that there is no evidence to support the trial court's adverse finding; and (2) if there is no evidence to support the adverse finding, an examination of the entire record must reveal that the contrary position has been established as a matter of law. *Id.* As to the issue of offset, however, as noted above, William had the burden of proof. Thus, with respect to an offset, Dana must only establish that there is no evidence to support the trial court's implied finding of an offset.

■ In examining the evidence to determine whether it supports the trial court's award, the record evidence must be considered in a light most favorable to William, the party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in his favor. *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998); *see Provident American Ins. v. Castaneda,* 988 S.W.2d 189, 206 (Tex.1998). "Anything more than a scintilla of evidence is legally sufficient to support the finding." *Formosa Plastics Corp.*, 960 S.W.2d at 48.

### TOTAL AMOUNT OWED BY WILLIAM UNDER THE DIVORCE DECREE

Here, the evidence establishes that from December of 1982 through March of 1984, William owed child support under the decree in the amount of $276.00 per month, or $4,416.00 total. In April of 1984, William allowed the family residence to be foreclosed upon. Thus, from April of 1984 through April of 1990, William owed $400.00 per month in child support, or $29,200.00 total.[6] Thereafter, from May of

---

5. The *Buzbee* and *Lewis* cases cited herein were decided under former TEX. FAM.CODE ANN. § 14.40(c), 14.41(c) Acts 1987, 70th Leg., 2nd C.S., ch. 73, § 8, which was *repealed and added by* Acts 1995, 74th Leg., ch. 20, eff. April 20, 1995 as TEX. FAM.CODE ANN. § 157.008.

6. This calculation was based upon the assumption that April reached the age of 18 in May of 1990 as her mother testified to rather than May of 1991, as indicated by the divorce decree. If she actually reached the age of 18 in May of 1991, then child support owed from April 1984 through April of 1991, would total $34,000.00.

1990 through July of 1993,[7] William owed child support in the amount of $200.00 per month on the first of each month, which totaled $7,800.00. Thus, from December of 1982 through the first of July 1993, assuming that April reached the age of eighteen in May of 1990, William was obligated under the divorce decree to have paid child support in the amount of $41,-416.00. If, however, April reached the age of eighteen in May of 1991, total support payments due under the decree would have equaled $43,816.00.

### TOTAL AMOUNT WILLIAM PAID UNDER THE DECREE

■ At trial, Dana initially testified that since 1982, William had paid her approximately $1,000.00 total under the terms of the decree. She, however, later stipulated to having received $4,897.00 in checks. William, however, testified that he had paid Dana a total of $20,313.92 in child support since 1982. As support for his position, William testified that he had with him the following records: (1) canceled checks totaling $4,963.00; (2) money order receipts or photocopies totaling $800; (3) check registers totaling $3,957.68; (4) one-half of a house payment totaling $1,984.00; and (5) cash payments totaling $6,507.32. While these amounts total $18,212.00, William also testified that in addition to child support payments, he also made utility payments for Dana when she was in a financial bind. Viewing the evidence in the light most favorable to the trial court's finding, and taking as true William's testimony that he made child support payments to Dana totaling $20,313.92, if April became eighteen in May of 1990, the total of arrearages under the divorce decree before any statutory offsets was $21,102.08 ($41,416.00—$20,313.92). If, however, April reached the age of eighteen in May of 1991, then the total of arrearages under the divorce decree before statutory offsets would have been $23,502.08 ($43,816.00—$20,313.92). Thus, unless a right to offset

is established by the evidence, Dana has prevailed on her legal sufficiency challenge because the evidence definitively establishes that there is no evidence that the total of arrearages is merely $7,600.00, and the evidence definitively establishes that the total of arrearages is one of two amounts in excess of the trial court's award of $7,600.00.

### OFFSETS AND CREDITS

■ As noted in section 157.262(b) above, a judgment for arrearages may be subject to a counterclaim or offset. Under section 157.008, William had the burden of proof to establish his entitlement to such an offset. Section 157.008 provides that an offset may be given when he pleads the affirmative defense of voluntary relinquishment, *i.e.*, that "the obligee voluntarily relinquished to the obligor actual possession and control of a child." TEX. FAM. CODE ANN. § 157.008 (Vernon 1996). Section 157.008(b), however, specifies that voluntary relinquishment must be for "a time period in excess of any court-ordered periods of possession of and access to the child," and it requires that "actual support must have been supplied by the obligor." *Id.* Thus, to receive a credit against the arrearage, the obligor must have provided the court with "some evidence of his expenditures on the child." *Buzbee*, 870 S.W.2d at 341; *Lewis*, 853 S.W.2d at 855(if obligor could show that obligee had voluntarily relinquished care, control and possession of child to him for any of the months obligee had asserted nonpayment of child support, then obligor would be entitled to offset or counterclaim for actual, direct support expenses corresponding to periods of claimed arrearage); *Rinehold v. Rinehold*, 790 S.W.2d 404, 406 (Tex. App.—Houston [14th Dist.] 1990) *overruled on other grounds* 924 S.W.2d 366, 368(obligor's evidence of household expenses for the period in which his child resided with him divided by number of persons in the household provided evi-

---

7. Michael reached the age of 18 on July 29, 1993.

dence of actual expenditure upon child sufficient to sustain trial court's offset against obligee's claimed arrearage).

Here, however, William merely pleaded that he be allowed all lawful offsets and credits. The affirmative defense of voluntary relinquishment was never pleaded. It does appear from the record, however, that the issue of voluntary relinquishment was tried by implied consent. At trial, the evidence was undisputed that April moved in with William in January of 1987, and she thereafter stayed with him until she became eighteen years of age in May of 1990. According to William, he and Dana thereafter agreed in April of 1988 that she would bear Michael's expenses, and he would bear April's expenses. William, however, introduced no evidence of actual expenditures made on April's behalf. Consequently, the evidence does not establish that William was entitled to an offset against the total arrearages. *Buzbee,* 870 S.W.2d at 341. William having failed to establish his right to an offset for actual expenses incurred during periods of voluntary relinquishment, we hold that the record fails to contain legally sufficient evidence to support the trial court's finding of $7,600.00 in child support arrearages after offsets and credits.

#### CONCLUSION

We sustain the legal sufficiency challenge contained in Dana's second point of error, and reverse the trial court's judgment.[8] While ordinarily a legal sufficiency challenge requires that we render judgment on the arrearage plus interest as set forth in sections 157.263, and 157.265, because of conflicts in the record concerning April's birth year, we are unable to render judgment on the total arrearage. Moreover, in her brief, Dana has specifically requested that we remand the case for a new trial in the event we sustain her legal sufficiency point. Therefore, having found

8. In light of our disposition of point two, we need not address Dana's first and third points of error.

error in the judgment, we conclude that the ends of justice would be best served by remanding the case for a new trial rather than rendering judgment. *United States Fire Ins. Co. v. Carter,* 473 S.W.2d 2 (Tex. 1971).

Accordingly, the judgment is *reversed and the cause is remanded for a new trial.*