Opinion filed March 6, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00294-CV

_____

## IN THE INTEREST OF C.S., K.S., AND A.S., CHILDREN

**On Appeal from the 220th District Court**

**Hamilton County, Texas**

**Trial Court Cause No. FM11499**

## M E M O R A N D U M   O P I N I O N

This appeal arises from a dispute concerning child support arrearage. Justin, the father of C.S., K.S., and A.S., filed suit against Crystal, the mother of the three children, in which he sought a declaratory judgment for a finding on child support arrearage that the attorney general's office claimed that he owed. Crystal filed a counterclaim in which she sought a declaratory judgment for $47,411.75, the amount the A.G.'s office alleged that Justin owed in child support arrearage. Crystal also sought to modify the child support order and requested that the

modification be retroactive. The trial court found that Justin was not in arrears, that he had overpaid child support, and that the A.G.'s office should return the amount it had seized from Justin's bank account. The trial court also modified the child support, but it did not order the modified amount to be retroactive as requested by Crystal. Crystal appeals. We affirm.

Justin and Crystal divorced in 2000. In the final decree of divorce, the trial court ordered Justin to pay child support through the district clerk of Hamilton County. Justin made some payments through the district clerk in 2000 and 2001. In 2002, Justin voluntarily increased his monthly child support payments. Crystal filed a motion to modify child support in 2006. The court entered an agreed order that increased the child support and ordered the amount to be withheld from Justin's paycheck. The child support was modified several other times between 2006 and 2011. At some point in 2011, the amount of child support that was withheld from Justin's checks dropped dramatically. Justin contacted the A.G.'s office to determine why the amount had been reduced. He subsequently received letters from the A.G.'s office that stated he was in arrears and notified him that a lien would be placed on his bank account. His bank account was seized, and Justin filed suit.

At the hearing, Crystal presented the A.G.'s financial activity report that showed Justin was in arrears in the amount of $47,411.75 as of October 7, 2011. This amount was based on child support that Justin allegedly did not pay from 2000 to 2006. Payments not made through the district clerk's office were not reflected on the activity report. There was no arrearage alleged after 2006, and it was undisputed that since 2006 Justin had overpaid child support in the amount of $3,633.42. Justin disputed that he was in arrears and claimed that he had paid Crystal directly because that is what she had requested. Justin presented bank statements from 2003 to 2005 to show some of the amounts that he paid Crystal.

Crystal admitted that Justin made some payments to her, but she did not know the amounts and dates of the payments. She testified that she did not know how much Justin owed her.

In her first issue, Crystal alleges that the trial court committed reversible error when it admitted printouts of Justin's bank statements from 2003 to 2005 that did not include copies of the canceled checks referenced in each statement. The operations officer from the bank testified that the bank normally destroys records after five years but that she was able to recover some of Justin's bank statements from an old computer. The statements did not include images of the canceled checks. The operations officer explained that the actual checks would have been included with the statements when the statements were created and mailed to Justin but that the records that she was able to recover did not include a copy of the checks. Crystal objected to the bank statements under the Rule of Optional Completeness. The trial court overruled her objection and admitted the bank statements.

The Rule of Optional Completeness provides:

> When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence, as when a letter is read, all letters on the same subject between the same parties may be given. "Writing or recorded statement" includes depositions.

TEX. R. EVID. 107. Crystal argues that the admission of the partial bank statements left an incomplete picture of the true facts. She also contends that, because Justin was permitted to testify from incomplete bank records, he was not subject to cross-examination based on the complete records. She argues that the bank statements should have been excluded under Rule 107 because the statements were not

complete.  However, Rule 107 is not a rule of exclusion, but a rule of admissibility. *Lomax v. State*, 16 S.W.3d 448, 450 (Tex. App.—Waco 2000, no pet.).  If Crystal had offered the checks or a complete statement from the bank that included the checks, the documents would have been admissible under Rule 107.  Crystal never offered any other document to complete the statements offered by Justin, nor does it appear that such documents were available to offer.[1]  Furthermore, Crystal's trial counsel cross-examined Justin regarding how he could know which amounts were for child support without actually seeing the checks and what was written on the memo line.  The trial court did not err when it admitted the bank statements over Crystal's Rule 107 objection.  We overrule Crystal's first issue.

Crystal argues in her second issue that the trial court committed reversible error when it reduced or modified the amount of the child support arrearage in violation of Section 157.263 of the Texas Family Code.  Section 157.263(a) provides that, "[i]f a motion for enforcement of child support requests a money judgment for arrearages, the court shall confirm the amount of arrearages and render one cumulative money judgment."  TEX. FAM. CODE ANN. § 157.263(a) (West Supp. 2013).  "In rendering a money judgment under [Section 157.263], the court may not reduce or modify the amount of child support arrearages but, in confirming the amount of arrearages, may allow a counterclaim or offset."  *Id.* § 157.263(b–1).  Crystal argues that Justin did not plead or prove an offset as to the amount of arrearage owed and that the trial court should have confirmed the amount of arrearage as $47,411.75—the amount reflected in the A.G.'s financial activity report for Justin.  Crystal further argues that the trial court misstated the law when it found that it was not bound by the A.G.'s report to determine an arrearage of child support.

---

[1]Both Crystal and Justin testified that they had not kept their bank records from that time period. The operations officer testified that she gave Justin everything that the bank had regarding his account. The bank does not normally keep records beyond five years.

Justin asserts that Section 157.263 does not apply because Crystal never filed a motion for enforcement and because the section specifically governs a request for a money judgment that is brought in a motion for enforcement. Assuming, without deciding, that Section 157.263 does apply when a party files a declaratory judgment that seeks to determine the amount of arrearages, we find that the trial court did not violate the section because it did not reduce or modify the arrearage.

Justin contends that the trial court was not limited to the consideration of only the A.G.'s report when it determined the amount of arrearage. We agree. The trial court may consider evidence of direct payments from the obligor to the obligee even when the divorce decree provides for the obligor to make payments through the court's registry. *Buzbee v. Buzbee*, 870 S.W.2d 335, 339–40 (Tex. App.—Waco 1994, no writ); *Niles v. Rothwell*, 793 S.W.2d 77, 79 (Tex. App.—Eastland 1990, no writ). Here, the trial court found that Justin's testimony and other evidence of payment were more credible than Crystal's evidence of nonpayment and that Justin made every payment of child support required of him by any court order. The court concluded that Justin was not in arrears and further found that Justin had overpaid child support. The court did not reduce or modify the amount of child support arrearage, but simply found there was no arrearage. We overrule Crystal's second issue.

In her third issue, Crystal alleges that the trial court committed reversible error when it did not find an arrearage in child support from 2001 to 2002. She contends the A.G.'s report showed that, as of December 31, 2002, Justin was in arrears in the amount of $13,587.57 and that there was no evidence to contradict this amount.

Justin testified that he moved to New Orleans shortly after the divorce and returned in December 2000. When he returned, he attended fire, E.M.T., and

5

paramedic school. His parents paid for school, and he used the money that he had withdrawn from his retirement from a previous employer to pay child support. He did not obtain employment until November 2001. Shortly after he obtained employment, Crystal and he agreed that his child support payments should be increased, and he began paying her the increased amount. From November 2001 until October 2005, he worked as a firefighter at the Copperas Cove Fire Department. He paid Crystal biweekly and did not miss a payment. Crystal testified that Justin did make some payments directly to her during the time frame at issue.

Crystal points to text messages that Justin sent her in May 2011 in which he asked her to calculate how much child support he owed. She claims that those texts contain admissions by Justin that he owed her some money. The text messages show that Justin asked Crystal to figure out how much she thought he owed her so that they could settle the issue. Crystal responded that, since they had been unable to figure it out together, the A.G.'s office was handling the matter. Justin replied that she knew that the A.G.'s amount was way off. At the hearing, Justin testified that, although he did not believe that he owed any money, he was trying to reach an agreement in the interest of the children and so that they could settle the matter. He offered her four months of child support, but she declined.

The trial court found that Justin was more credible than Crystal. Based on Justin's testimony, the trial court could have determined that Justin made each child support payment owed during 2001 and 2002 and that he was not in arrears. We overrule Crystal's third issue.

Crystal argues in her fourth issue that the trial court erred to the extent that it found that, because she agreed to modify the means and method of payments, there was no arrearage. She directs us to *Williams v. Patton*, 821 S.W.2d 141 (Tex. 1991), for the proposition that an obligee is prohibited from settling a claim for

6

child support arrearage before the unpaid amount has been reduced to a final judgment. Crystal did not settle a claim for child support arrearage in this case. Thus, *Williams* does not apply. Furthermore, we held in *Niles* that, if the obligee accepts direct payments from the obligor, she waives her right to complain that the obligor did not make those child support payments through the court registry as required by the divorce decree. *Niles*, 793 S.W.2d at 79. As we discussed above, the trial court was permitted to consider the direct payments that Justin made to, and that were accepted by, Crystal when it determined the arrearage. We overrule Crystal's fourth issue.

In her fifth issue, Crystal asserts that the trial court committed reversible error when it failed to award her attorney's fees under Sections 106.002 and 157.167 of the Family Code. Section 157.167 of the Family Code provides that the trial court shall order the obligor to pay the obligee's attorney's fees *if* the court finds that the obligor has failed to make child support payments. FAM. § 157.167(a) (West 2008). The trial court did not find that Justin failed to make child support payments; thus, Crystal is not entitled to attorney's fees under Section 157.167.

Crystal argues that she is also entitled to attorney's fees under Section 106.002. Section 106.002 provides that a trial court *may* award attorney's fees in a suit affecting the parent-child relationship. *Id.* § 106.002(a). The trial court found that Crystal incurred $750 in attorney's fees in her pursuit to modify the child support order, but it concluded that neither party should be awarded attorney's fees. Crystal contends that it is inherently unfair to require her to pay her attorney's fees in order to have the child support set according to the guidelines when Justin refused to take the legal steps necessary to correct the amount of child support he owed based on his current income. Crystal's counsel argued at the

7

hearing that the fees were necessary because Justin did not provide her with the records that she needed in order to calculate the modified amount of child support.

Justin did not contest the request to modify and proposed that, even though he was currently unemployed, the child support should be calculated based on his earnings in 2011. Justin provided Crystal with his 2011 amended tax return prior to the second day of the hearing, and he had provided his 2011 tax return the previous week. His counsel informed the court that she had previously provided Crystal with a copy of Justin's 1099 and W-2 statements. The 2011 amended tax return was prepared on June 7, 2012, the same day that Justin provided the return to Crystal.

The trial court is not required to award attorney's fees under Section 106.002, but it is within its discretion to do so. *Id.* The trial court abuses its discretion if it acts arbitrarily and unreasonably without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Because Crystal has not demonstrated that the trial court abused its discretion when it did not award attorney's fees to either party, we overrule her fifth issue.

In her final issue, Crystal argues that the trial court erred when it failed to retroactively modify the child support. Under Section 156.401 of the Family Code, a trial court may retroactively modify child support; however, it is not mandatory that the obligation apply retroactively. FAM. § 156.401 (West Supp. 2013). We review an order to modify child support under an abuse of discretion. *Nordstrom v. Nordstrom*, 965 S.W.2d 575 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). The evidence must directly support a retroactive modification in order to justify such an award. *Id.*

Crystal argues that the increase in child support should have been ordered to apply retroactively beginning on November 1, 2011, and that, because the

8

modification was not ordered to apply until July 1, 2012, the trial court allowed Justin to pay less than the amount required by the child support guidelines for eight months. Crystal presented no evidence at the hearing regarding whether the modification should apply retroactively. In addition, the evidence showed that Justin had overpaid his child support in the amount of $3,633.42 since June 2006. Although he was not entitled to a credit because he made the overpayments voluntarily, the trial court could have taken this evidence into consideration when it decided not to order the modified child support to apply retroactively. We cannot say that the trial court abused its discretion when it did not order the child support modification to apply retroactively. Crystal's sixth issue is overruled.

We affirm the order of the trial court.


JIM R. WRIGHT
CHIEF JUSTICE


March 6, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.