Opinion issued June 16, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00562-CV

———————————

Andrew Campbell, Appellant

V.

Leigh
Campbell,
Appellee



 



 

On Appeal from the 359th Judicial District Court 

Montgomery County, Texas



Trial Court Case No. 06-02-00983-CV

 



 

MEMORANDUM OPINION

          Appellant,
Andrew Campbell, challenges the trial court’s order awarding, appellee, Leigh
Campbell, damages in the amount of $26,671.00 and attorney’s fees for Andrew’s
failure to comply with the trial court’s underlying divorce decree.  In two issues, Andrew contends that the
evidence “does not support” the trial court’s award of damages and attorney’s
fees.  

          We
affirm.

Background

          On
July 23, 2008, the trial court signed an agreed final divorce decree, dividing
the parties’ assets and liabilities.  In
its division of the parties’ marital estate, the trial court awarded Andrew,
among other things, 100% interest in the “Texas limited liability company known
as G.L.F.L.P.I., L.L.C . . . subject to the requirement that the property known
to the parties as the ‘Carlton Woods Lot’ . . . be sold” and the net proceeds
of the sale be distributed 60% to Leigh and 40% to Andrew.  The trial court ordered that Andrew “pay, as
a part of the division of the estates to the parties, and . . . indemnify and
hold [Leigh] and her property harmless from any failure to so discharge,” all
“encumbrances, ad valorem taxes, liens, assessments, or other charges due” or that
became “due on the real and personal property awarded” to him.  This included any and all liabilities arising
out of or in connection with any and all business interests, such as interests
in limited liability companies awarded to him in the divorce decree.  The court further ordered Andrew to keep
Leigh “fully informed” as to the “ongoing status of the process of selling the
‘Carlton Woods Lot’ through the closing and funding of the sale, and including
without limitation advance notice of the date, time and location of the sale
closing.”  

          In
the order, the trial court defined “net sales proceeds” as “the gross sales
price less cost of sale and full payment of any mortgage indebtedness or liens
on the ‘Carlton Woods Lot,’ and reimbursement of any ‘Pre-Sale Expenditures’”
to the parties.  The court ordered that
if “either party makes any payments of principal, interest, taxes, or
insurance” on the lot before the closing of its sale, that party would be
reimbursed 100% for any such payments.  It
further ordered that Andrew, within three business days after the receipt of
any written request by Leigh, furnish to her “written information from the
lienholder on the ‘Carlton Woods Lot’ regarding the then current standing of
payments due on the note secured by the ‘Carlton Woods Lot.’” 

On March 16, 2009, Leigh filed a
“Motion for Enforcement of Final Decree of Divorce” in the trial court, asking
it to enforce the divorce decree and order Andrew “to pay the monies owed on
‘The Carlton Woods Lot’ immediately and to do anything else necessary to
prevent this property from foreclosure.” 
In the alternative, Leigh requested that the trial court order Andrew
“to pay her 60% of the appraised value of ‘The Carlton Woods Lot.’’  

At the hearing on Leigh’s motion,
Paul Petticrew, the realtor hired by Andrew to sell the Carlton Woods Lot, testified
that he originally listed the property for sale at $665,000 and, after he did
not receive any offers to buy the property, he reduced the price to
$615,000.  Still, no one offered to buy
the property.  Petticrew explained that
had he sold the property, he would have received a 6% commission of the sales
price and there would have been additional “closing costs,” which are generally
3% of the sales price.   

Leigh testified that she had recently
had the property appraised and, in her opinion, the property was worth
$600,000.  She noted that her opinion of
value was “sustained . . . by what [she] engaged the appraiser to do.”  Leigh noted that the property went into
foreclosure and was sold for $425,000 at the foreclosure sale, with a total
amount of $556,215 due on the property.  

On November 6, 2009, the trial
court issued rulings on Leigh’s motion, finding that: 

1.
      ANDREW W. CAMPBELL failed to pay the
loan payments to Woodforest National Bank on “The Carlton Woods Lot” (paragraph
H-10 of the Agreed Final Decree of Divorce (signed by this Court on July 23,
2008) in violation of paragraph HD-2 of the Agreed Final Decree of Divorce
(signed by this Court on July 23, 2008).

          

IT IS THE FINDING OF THIS
COURT that ANDREW W. CAMPBELL is in contempt of the Agreed Final Decree of
Divorce (signed by this court on July 23, 2008).  

 

The trial court then requested that each party
submit a brief memorandum with a recommendation as to the sanctions that it
should impose on Andrew for the loss of the Carlton Wood’s Lot.

          After
submission of the parties’ memoranda, the trial court issued an order, listing
its findings as follows:

ANDREW
CAMPBELL is in violation of paragraph H-10 of the Agreed Final Decree of
Divorce (signed by this Court on July 23, 2008).

 

Payment
of the net sales proceeds awarded to LEIGH CAMPBELL in the decree is no longer
specifically possible and not an adequate remedy.

 

A
money judgment in the amount of the damages caused by that failure to pay the
loan payments is appropriate and allowed by law.

 

The Court further found
that,

 

The
fair market value of “The Carlton Wood Lot” is $600,000.00;

 

The
balance owed on the indebtedness secured by “The Carlton Woods Lot” at the time
of the foreclosure is $556,215.36;

 

There
is no reimbursement of “pre-sale expenditures” to be made to ANDREW CAMPBELL;

 

The
total net sales proceeds is $43,785.00;

 

60%
of those net sales proceeds is $26,671.00;

 

Reasonable
and necessary attorney’s fees in the amount of $14,939.00 were incurred by
LEIGH CAMPBELL in this enforcement proceeding. 


 

The trial court ordered that Andrew pay Leigh $26,671.00
as damages for his failure to comply with the Agreed Final Decree of Divorce
and $14,936.00 as reasonable and necessary attorney’s fees incurred in her
enforcement action against Andrew.  

Standard of Review

We review a trial
court’s ruling on a post-divorce motion for enforcement or clarification of a
divorce decree under and abuse of discretion standard.  Hollingsworth v. Hollingsworth,
274 S.W.3d 811, 815 (Tex. App.—Dallas 2008, no pet.); Gainous v. Gainous,
219 S.W.3d 97, 103 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).  Under the abuse of discretion standard,
sufficiency of the evidence is not an independent ground of error but rather is
a relevant factor in assessing whether the trial court abused its discretion.  Beck v. Walker,
154 S.W.3d 895, 902 (Tex. App.—Dallas 2005, no pet.);
In re T.J.L.,
97 S.W.3d 257, 266 (Tex. App.—Houston [14th Dist.] 2002, no pet.).  

Our review of a legal
sufficiency point requires us to consider only the evidence and inferences that
tend to support the challenged findings, disregarding all evidence and
inferences to the contrary.  Cooper v.
Cooper, 176 S.W.3d 62, 63
(Tex. App.—Houston [1st Dist.] 2004, no pet.). 
If there is any evidence of probative force to support the finding,
i.e., more than a mere scintilla, we will overrule the issue.  Id.  In our review of the factual sufficiency of
the evidence, we must consider and weigh all of the evidence, and we will set
aside a verdict only if the evidence is so weak or if the finding is so against
the great weight and preponderance of the evidence that it is clearly wrong and
unjust.  Pool v. Ford Motor
Co., 715 S.W.2d 629, 635 (Tex. 1986).  When,
as here, the trial court did not file findings of fact and conclusions of law,
we imply that the trial court made all findings necessary to support the
judgment and will uphold those findings if supported by sufficient evidence.  See Holt Atherton
Indus., Inc. v. Heine, 835 S.W.2d 80, 83–84
(Tex. 1992); Beck v. Walker,
154 S.W.3d 895, 901 (Tex. App.— Dallas 2005, no pet.).

Trial Court’s Order 

          In
his first issue, Andrew argues that the evidence is insufficient to support the
trial court’s award of $26,671.00 to Leigh because the property did not sell, the
“trial court’s ruling is based upon speculation of the sale of the property,”
and “speculation of future events is not grounds for contempt.”  See Ex parte
Chacon, 607 S.W.2d 317 (Tex. App.—El Paso 1980, no writ).  

Although the trial court did find Andrew to be in contempt, it is clear
that the trial court did not make its ultimate award under a theory of
contempt.  See Tex. Fam. Code Ann.
§ 9.010 (Vernon Supp. 2010).  Rather, the
trial court enforced the divorce decree by awarding Leigh a money judgment
pursuant to Texas Family Code section 9.010. 
Compare Tex. Fam. Code Ann. § 9.010, with Tex.
Fam. Code Ann. § 9.012 (Vernon Supp. 2010); see In re Holder, No. 09-10-00197-CV, 2010 WL 2541882, at *4 (Tex.
App.—Beaumont June 24, 2010, no pet.) (mem. op.).  The trial court specifically found that
Andrew, “in violation of paragraph H-10 of the Agreed Final Decree of Divorce,”
failed to pay the note on the property and payment of the net sales proceeds
awarded to Leigh was “no longer specifically possible and not an adequate
remedy.”  Andrew’s
inability to comply with the divorce decree because of his failure to pay the
note required the trial court to reduce the award to a money judgment pursuant
to section 9.010.  See Ball v. Ball, No. 14-99-01402-CV, 2001 WL 543731, at *2 (Tex.
App.—Houston [14th Dist.] May 24, 2001, no pet.). 

Andrew
argues that the evidence does not support the trial court’s award of $26,671 to
Leigh because the evidence shows that if “the property would have sold, then
the ‘net sales proceeds’ would have been a [loss of] $10,215.36.”  He asserts that the trial court “received
uncontradicted evidence that the sale of the property would have generated a
sales commission of 6% and closing costs of 3%.”  And, because the trial court did not take
these factors into consideration,” its “award places [Leigh] in a better
position than she would have been had the property sold.”  As noted above, because the property went
into foreclosure, making a sale of the property impossible, the trial court was
authorized to exercise its discretion under the Family Code in awarding Leigh
money damages for the sale of the property. 
Tex. Fam. Code Ann. §
9.010.  Leigh testified that based on an appraisal
of the property that she had had performed, the property had a value of
$600,000.  Her testimony provided some
evidence to support the trial court’s implied finding that the fair market value
of the property was $600,000.  See Fambro v. Eddleman, No. 11-02-00190,
2004 WL 68747, at *5 (Tex. App.—Eastland Jan. 15, 2004, no pet.) (mem. op.)
(holding that wife’s testimony that her one-half interest as to value of cattle
was $32,625 was some evidence to support trial court’s finding that fair market
value of cattle was $65,250, and her one-half interest was $32,625).  Andrew argues that Petticrew’s testimony
shows that had the property sold for $600,000, the net sales proceeds would have
resulted in a loss of $10,215.36 after paying the note, sales commission, and
closing costs.  However, because Andrew
failed to pay the note and the property went into foreclosure, no sale took
place.  In fact, Andrew did not provide
any evidence as to the value of the property, and Petticrew further testified
that he did not “know what the closing costs would have been . . . on this
particular property.”  

The trial
court, as the trier of fact, was the sole judge of the credibility of the
witnesses and the weight to give their testimony.  Munters Corp. v.
Swissco-Young Indus., Inc.,
100 S.W.3d 292, 299 (Tex. App.—Houston [1st Dist.]
2002, pet. dism’d).  As the fact finder,
the trial court was entitled to resolve any conflicts in the evidence and was
free to believe all, part, or none of the witnesses’ testimony.  Id.  Leigh testified that the value of the
property was $600,000, with $556,215.36 due to the lien holder.  This would leave a total of $43,784.64 as the
net sales proceeds, and, under the divorce decree, Leigh was entitled to 60% of
the net sales proceeds.  Accordingly, it
was within the trial court’s discretion to award Leigh $26,671.00 as a money
judgment because Andrew failed to comply with the divocre decree when he failed
to pay the note on the property.  See Tex.
Fam. Code Ann. §9.010.  

Viewing
the evidence in the light most favorable to the trial court’s award of
$26,671.00, Leigh’s testimony provided some evidence to support the award.  Additionally, the trial court’s award was not
so against the great weight and preponderance of the evidence as to be clearly
wrong and unjust.  Accordingly, we hold
that the evidence is legally and factually sufficient to support the trial
court’s award of $26,671.00 to Leigh.  

We
overrule Andrew’s first issue.  

Attorney’s Fees

          In
his second issue, Andrew argues that the trial court erred in awarding
attorney’s fees because the entire proceeding “was based upon speculation” and,
if “speculation cannot be used as a basis for contempt, it should not be used
as a basis to award attorney’s fees as well.” 
He further argues that “the record is clear that counsel for [Leigh] did
not prove up the fees that were awarded to him.”

          A
trial court may award reasonable attorney’s fees in a proceeding to enforce or
clarify a divorce decree.  Tex. Fam. Code Ann. § 9.014 (Vernon Supp.
2010); Wilson v. Wilson, 44 S.W.3d
597, 599–600 (Tex. App.—Fort Worth
2001, no pet.).  We review a trial
court’s decision to award or deny attorney’s fees under an abuse of discretion
standard.  Tex. Fam. Code Ann. § 9.014; Collins v. Moroch, No. 05-09-00811-CV, 2011 WL 783619, at *5 (Tex.
App.—Dallas Mar. 8, 2011, no pet.).  

          Leigh’s
attorney testified that his “fee for this particular matter is $500 an hour,
which is [his] customary fee, has been for the last six or seven years.”  He further testified that he believed it to
be reasonable and necessary for Leigh to engage him to pursue this matter and
that he thought the fees were “fair and reasonable according to the standards
both in Montgomery and in Harris County.” 
He further testified that the total amount of attorney’s fees, including
expenses, was $11,936, “plus a couple thousand dollars for coming up here and
doing this today.”  A copy of Piro’s
billing statements were introduced into evidence without objection.  Andrew’s attorney then stated, “I would point
out to the court that Mr. Piro only testified as to the reasonableness of his
fees.  There is no evidence before the
court as to the reasonable and necessary fees of Ms. Poulos at a hundred
dollars an hour, or of the paralegal at $150 an hour.” 

          Andrew
asserts that “no testimony or evidence [was] presented as to the reasonableness
and the necessity of the attorney’s fees awarded.”  However, after a review of the record, we
conclude that there is some evidence of the reasonableness of the fees.  Piro testified that he believed it was
reasonable and necessary for Leigh to retain his services, his customary fee
was $500 an hour, and “the fees are fair and reasonable according to the
standards both in Montgomery and in Harris County.”  Furthermore, copies of his billing statements
were introduced into evidence.  Viewing
the evidence in the light most favorable to the trial court’s award of
attorney’s fees, there is some evidence to support the award.  Additionally, the trial court’s award of
attorney’s fees is not so against the great weight and preponderance of the
evidence as to be clearly wrong and unjust. 
Accordingly, we hold that the evidence is legally and factually
sufficient to support the trial court’s award of attorney’s fees.  

          We
overrule Andrew’s second issue.

Conclusion

          We
affirm the order of the trial court.  

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Higley, and Brown.