OPINION
 

 Opinion by
 

 Justice MOSELEY.
 

 This is an appeal of an order granting judgment for a child support obligation. In three issues, Mari Beck contends that the trial court abused its discretion by failing to award her the child support arrears she proved, medical expenses, and reimbursement for child support she paid under a void order. In a fourth issue, Beck contends the trial court abused its discretion by awarding an offset without
 
 *885
 
 evidence of direct support and that is not authorized by the family code. In a fifth issue, Beck contends the trial court abused its discretion in awarding her an amount of attorney’s fees less than she requested, and that the evidence is factually insufficient to support the trial court’s attorney’s fee award. For the following reasons, we resolve Beck’s fourth issue in her favor and reverse the order as to the amount of child support arrears and render judgment for child support 'arrears in the amount of $7,350. Also, we resolve Beck’s fifth issue in her favor and reverse the amount of attorney’s fees and remand that issue to the trial court for further proceedings. We affirm the order in all other respects.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 In 1997, the 219th Judicial District Court of Collin County, Texas, signed an “Order Under Uniform Interstate Family Support Act” ordering appellee, Jamie Walker, to pay Beck $350 per month in child support for their child, T.B. The obligation began May 15, 1997, and continued until T.B. was eighteen years old or until he was no longer enrolled in high school, whichever occurred later.
 
 [1]
 
 In addition, the court also ordered Walker: (1) to maintain health insurance on T.B. for as long as child support was payable; (2) to pay all of T.B.’s health care expenses if, at the time they were incurred, Walker was not providing health insurance as ordered; and (3) to pay $2,450 with interest to the Texas Attorney General in retroactive child support.
 
 [2]
 

 Walker later sued Beck in Tennessee to modify visitation and the above child support obligation, and to change custody. The Tennessee court entered several orders pertaining to the suit. Under one order, Walker was awarded attorney’s fees and travel expenses. Pursuant to the Tennessee orders, T.B. lived with Walker from November 1999 to November 2000. During that time, Beck payed child support to Walker. However, in 2000, the Tennessee court determined that it did not have jurisdiction over the suit and vacated all orders.
 

 In 2000, Beck filed suit in Georgia, where she was living, seeking custody of T.B. That suit was dismissed for lack of jurisdiction, and Beck was ordered to pay Walker’s attorney’s fees and travel and other expenses.
 

 
 *886
 
 In 2001, Beck filed in Collin County a “Motion to Modify Child Support” and a “Motion to Enforce Child-Support Obligation and to Confirm Unpaid Child Support to Judgment and for Reimbursement for Health Care Expenses with Order to Appeal' and Show Cause.” Walker answered the motion to modify, generally denying the allegations. He also filed an answer to the motion to enforce, in which he both generally denied the allegations and pled that “there is no arrearage of child support.”
 

 The trial court heard both motions. Beck testified that Walker owed her $13,949.32 in child support arrears as of September 23, 2002. She supported her testimony with a “Texas Child Support Arrearage Summary Report” and a “State Registry Payment History.” Beck also testified that Walker owed her for certain health care expenses, including T.B.’s share of her health insurance payments, certain co-pays, and eye care. Beck also claimed that Walker owed her $4,000 for ten payments of $400 she made to Walker when T.B. lived with Walker, which she was ordered to pay by the Tennessee court. She produced a $400 money order dated May 18, 2000, and testified that she did not have all the documentation of her payments because it was in storage. Walker admitted receiving “some payments.”
 

 Walker testified that the Texas Attorney General closed his child support account in September 1999 because he had zero balance of child support. Accordingly, the amount of arrearage was $11,550 ($350 per month, due on the fifteenth day of each month, for the thirty-three months from October 1999 through June 2002). However, Walker also testified that he was entitled to some credits against that amount. He claimed he was entitled to a credit of $4,200 ($350 per month .for twelve months) for the period of time T.B. lived with him pursuant to the Tennessee court orders. He also testified Beck owed him $3,150, consisting of $1,000 in attorney’s fees and $250 expenses awarded by the Tennessee court and $1,500 in attorney’s fees and $400 in travel and related expenses awarded by the Georgia court.
 

 Walker also testified that he obtained health insurance for T.B. from 1997 to 2002. He testified that he informed Beck of the coverage. Exhibits 9 and 10 were letters dated, respectively, January and February 1997, in which Walker provided Beck information on the coverage beginning in 1997 and included health insurance documents. Exhibits 7 and 8 were certificates of health insurance coverage covering 1998 through 2002. Walker also testified that he understood from Beck that she had a problem regarding coverage at a doctor’s visit and that he wrote her in response that he sent the insurance card, the coverage, and “all the information.” Further, Walker testified that he never received any statement from Beck that T.B. was not covered on health insurance or that Walker owed reimbursement for health insurance premiums. Even though Walker did not provide a copy of any letters to Beck regarding the 1998 through 2002 coverage, he testified he sent them.
 

 Beck’s counsel testified that he had a contingent fee contract by which he would receive twenty-five percent of the child support arrears that were collected. He also testified regarding the hourly rate and the number of hours he had spent on the motion for enforcement, totaling $4,995.
 

 On December 5, 2002, the trial court signed an “Order Granting Judgment on a Child Support Obligation.” The court ordered Walker to pay $4,200 in child support arrears, with prejudgment interest, and $1,050 in attorney’s fees. On December 30, 2002, Beck moved for new trial and requested findings of fact and conclusions
 
 *887
 
 of law. The trial court did not enter any findings or conclusions, and Beck’s motion for new trial apparently was overruled by operation of law.
 

 On appeal, Beck makes no complaint regarding the trial court’s implied denial of her motion to modify child support. We therefore affirm that portion of the trial court’s judgment.
 

 JUDGMENT FOR CHILD SUPPORT ARREARS
 

 Beck’s first four issues attack the amount awarded her as “child support arrears.” Specifically, she contends the trial court abused its discretion by: (1) reducing the amount of child support arrearage and by not confirming the arrearage before reducing the judgment to reflect any offsets and counterclaims (issue one), and (2) awarding an offset or counterclaim in Walker’s favor without evidence of direct support and that was not authorized by the family code (issue four); (2) not awarding her an arrearage based on Walker’s health insurance obligation pursuant to section 154.188 of the family code (issue two); and (3) not awarding her reimbursement for child support she paid to Walker under Tennessee court orders (issue three). The record shows that the arrearage issue was raised by both parties’ pleadings, and that the offsets, health insurance obligation, and child support reimbursement issues were tried by consent.
 
 [3]
 

 A.
 
 Standard of Review
 

 In a nonjury trial, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony.
 
 Thomas v. Thomas,
 
 852 S.W.2d 31, 34 (Tex.App.-Waco 1993, no writ). The trial court is also the judge of the facts proved and the reasonable inferences to be drawn from those facts.
 
 Brigham v. Brigham,
 
 863 S.W.2d 761, 762-63 (Tex.App.-Dallas 1993, writ denied). Generally, when a fact finder is presented with conflicting evidence, it may believe one witness and disbelieve others.
 
 See McGalliard v. Kuhlmann,
 
 722 S.W.2d 694, 697 (Tex.1986).
 

 Most appealable issues in a family law case, including a trial court’s confirmation of child support arrearages, are reviewed under an abuse of discretion standard.
 
 Attorney Gen. of Tex. v. Stevens,
 
 84 S.W.3d 720, 722 (Tex.App.-Houston [1st Dist.] 2002, no pet.);
 
 Tate v. Tate,
 
 55 S.W.3d 1, 5-6 (Tex.App.-El Paso 2000, no pet.). A trial court’s judgment is reversed only when it appears from the record as a whole that the trial court abused its discretion.
 
 Worford v. Stamper,
 
 801 S.W.2d 108, 109 (Tex.1990);
 
 Stevens,
 
 84 S.W.3d at 722. A trial court abuses its discretion as to factual matters when it acts unreasonably or arbitrarily.
 
 Stevens,
 
 84 S.W.3d at 722 (citing
 
 Worford,
 
 801 S.W.2d at 109). A trial court abuses its discretion as to legal matters when it fails to act without reference to any guiding principles.
 
 Id.
 
 (citing
 
 *888
 

 Walker v. Packer,
 
 827 S.W.2d 833, 840 (Tex.1992)).
 

 To obtain findings of fact and conclusions of law, a party must file with the clerk of the trial court and present to the court a “Request for Findings of Fact and Conclusions of Law” within twenty days after judgment is signed. Tex.R. Civ. P. 296. Here, the trial court signed the order granting judgment on December 5, 2002, and Beck filed a “Request for Findings of Fact and Conclusions of Law” twenty-five days later, on December 30, 2002. Accordingly, Beck’s request was untimely.
 
 See Niskar v. Niskar,
 
 136 S.W.3d 749, 753 (Tex.App.-Dallas 2004, no pet.). In a nonjury trial, where findings of fact and conclusions of law are neither filed nor timely requested, it is implied that the trial court made all necessary findings to support its judgment.
 
 Holt Atherton Indus., Inc. v. Heine,
 
 835 S.W.2d 80, 83 (Tex.1992). The legal and factual sufficiency of the evidence to support these implied findings may be challenged when, as in this case, a reporter’s record is brought forward.
 
 Id.
 
 at 84 (citing
 
 Roberson v. Robinson,
 
 768 S.W.2d 280, 281 (Tex.1989)). However, under an abuse of discretion standard, arguments of legal and factual sufficiency of the evidence to support the judgment are not independent grounds for asserting error, but are relevant factors in assessing whether a trial court abused its discretion.
 
 Niskar,
 
 136 S.W.3d at 753.
 

 We assume for the sake of argument, as does Walker, that the trial court impliedly found the total amount of arrears of $4,200 by using Walker’s numbers — i.e., by subtracting from Walker’s stated amount of gross arrearages ($11,550) the amounts of his claimed credits for the period of time when T.B. lived with him ($4,200) and the amounts Beck owed him under Tennessee and Georgia court orders ($3,150). Thus, the trial court impliedly found that Beck was not entitled to health care expenses or reimbursement for the child support she paid. In addition, Beck and Walker assume that the trial court calculated the attorney’s fee award of $1,050 by taking twenty-five percent of $4,200. We agree these implied findings were necessarily findings because this is the only combination of the amounts in evidence that equals the judgment amount and the amount of attorney’s fees awarded. Accordingly, these implied findings are elements in our review of the record for abuse of discretion.
 

 B. Child Support Arrears
 

 In her first issue, Beck contends the trial court abused its discretion in reducing the amount of child support arrearage and by failing to confirm the arrearage before reducing the judgment to reflect any offsets and counterclaims. In her fourth issue, Beck contends the trial court abused its discretion by awarding an offset or counterclaim in Walker’s favor that was not authorized by the family code and when he produced no evidence of direct support. Because these issues attack the trial court’s judgment for child support arrears pursuant to chapter 157 of the family code, we address them together.
 

 1. Applicable Law
 

 Section 157.263 provides for confirmation of child support arrearages in the event of a motion to enforce the payment of child support:
 

 (a) If a motion for enforcement of child support requests a money judgment for arrearage, the court shall confirm the amount of arrearage and render one cumulative money judgment.
 

 (b) A cumulative money judgment includes:
 

 (1) unpaid child support not previously confirmed;
 

 
 *889
 
 (2) the balance owed on previously confirmed arrearage or lump sum or retroactive support judgments;
 

 (3) interest on the arrearage; and
 

 (4) a statement that it is a cumulative judgment.
 

 Tex. Fam.Code Ann. § 157.263(a) (Vernon Supp.2004-05);
 
 Stevens,
 
 84 S.W.3d at 722. Section 157.261 of the family code provides for the reduction of unpaid child support to judgment:
 

 (a) A child support payment not timely made constitutes a final judgment for the amount due and owing, including interest as provided in this chapter.
 

 (b) For the purposes of this subchapter, interest begins to accrue on the date the judge signs the order for the judgment, unless the order contains a statement that the order is rendered on another specific date.
 

 Tex. Fam.Code Ann. § 157.261 (Vernon 2002). Section 157.262 provides, in pertinent part:
 

 (a) Except as provided by this section, ... in rendering a money judgment, the court may not reduce or modify the amount of child support arrearage.
 

 [[Image here]]
 

 (f) The money judgment for arrearage rendered by the court may be subject to a counterclaim or offset as provided by this subchapter.
 

 Id.
 
 § 157.262 (Vernon 2002). Thus, although the amount of arrearages is subject to a counterclaim for offset, the trial court has no authority to reduce or modify the amount of arrearage in rendering judgment.
 
 Curtis v. Curtis,
 
 11 S.W.3d 466, 471 (Tex.App.-Tyler 2000, no pet.);
 
 Lewis v. Lewis,
 
 853 S.W.2d 850, 854 (Tex.App.Houston [14th Dist.] 1993, no writ) (citing
 
 Williams v. Patton,
 
 821 S.W.2d 141, 143 (Tex.1991)). In other words, the trial court acts as a “mere scrivener” in “mechanically” tallying the amount of arrear-age.
 
 Curtis,
 
 11 S.W.3d at 471. However, the final judgment is to be rendered only after offset and counterclaim are considered.
 
 Lewis,
 
 853 S.W.2d at 854.
 

 Section 157.008 provides for an “affirmative defense to motion for enforcement of child support”:
 

 (a) An obligor may plead as an affirmative defense in whole or in part to a motion for enforcement of child support that the obligee voluntarily relinquished to the obligor actual possession and control of the child.
 

 (b) The voluntary relinquishment must have been for a time period in excess of any court-ordered periods of possession of and access to the child and actual support must have been supplied by the obligor.
 

 [[Image here]]
 

 (d) An obligor who has provided actual support to the child during a time subject to an affirmative defense under this section may request reimbursement for that support as a counterclaim or offset against the claim of the obligee.
 

 (e) An action against the obligee for support supplied to a child is limited to the amount of periodic payments previously ordered by the court.
 

 Id.
 
 § 157.008(a), (b), (d), (e) (Vernon 2002);
 
 Curtis,
 
 11 S.W.3d at 471-72.
 

 Under these statutory provisions, Beck had the burden of establishing the arrearage — the difference between the payments made by Walker and the payments required under the 1997 Collin County order.
 
 See id.
 
 at 472. Thereafter, Walker had the burden of establishing any counterclaim or offset.
 
 See id.; Buzbee v. Buzbee,
 
 870 S.W.2d 335, 339 (Tex.App.Waco 1994, no writ) (discussing predecessor statute).
 

 
 *890
 

 2. Discussion
 

 In her first issue, Beck argues that she met her burden of proving the child support arrearage by providing a “Texas Child Support Arrearage Summary Report” and the “State Registry Payment History.” She contends this undisputed evidence showed arrearage of $13,949.32 as of September 23, 2002; thus, the trial court clearly abused its discretion by failing to make a finding of arrears in the amount of $13,949.32.
 

 Walker testified that the Texas
 
 Attorney
 
 General closed his child support account in September 1999 because he had zero balance of child support. Accordingly, there was some evidence that the amount of arrearage was $11,550. This evidence conflicts with Beck’s testimony. Accordingly, we reject Beck’s argument that evidence established as a matter of law the amount of the child support ar-rearage. Moreover, because Beck did not timely file her request for findings of fact and conclusions of law, we reject her argument that the trial court abused its discretion by failing to make a finding confirming this amount of arrearage.
 

 Beck makes two additional arguments in her first issue regarding the calculation of the $4,200 judgment amount. First, Beck argues there is no interest reflected in the judgment amount. However, section 157.263 provides that the court “shall confirm the amount of arrearage and render one cumulative money judgment” that includes “interest on the arrearage.” Tex. Fam.Code Ann. § 157.263(a), (b)(3) (Vernon Supp.2004-05). The “Order Granting Judgment on a Child Support Obligation” provides that judgment in the total amount due of $4,200 “together with legal interest at the rate of 6% simple interest per an-num from SEPTEMBER 23, 2002, is granted in favor of [Beck].” Further, the order states, “This Judgment is a cumulative judgment, covering all child support arrears and
 
 accrued interest
 
 as of this date.” (Emphasis added.) Accordingly, the record does not show that the judgment amount does not include interest.
 

 Second, Beck argues that the trial court abused its discretion by failing to specify a period of time for the payments, thus effectively reducing the amount of the judgment. However, nothing in the judgment shows the judgment amount is not immediately due and payable.
 
 See In re M.C.R.,
 
 55 S.W.3d 104, 109 (Tex.App.-San Antonio 2001, no pet.) (“The trial court is accorded broad discretion in setting and modifying child support payments.”). Accordingly, because we have rejected Beck’s challenges to the calculation of arrearage, Beck has not shown an abuse of discretion as to any amount of arrearage. We resolve Beck’s first issue against her.
 

 “Only after the arrearage is confirmed can the judge reduce the amount of the
 
 judgment
 
 to reflect offsets and counterclaims for actual support.”
 
 Buzbee,
 
 870 S.W.2d at 340. In her fourth issue, Beck argues that Walker presented no evidence of expenditures made on behalf of T.B. during his period of possession (November 1999 through November 2000), and that this possession was not voluntary on her part because it was ordered by the Tennessee court.
 

 Walker testified that T.B. lived with him
 
 from
 
 November 1999 to November 2000, and was enrolled in high school during that time. There was evidence that the Tennessee court ordered this change in custody. However, when this and other Tennessee orders were vacated, the period of relinquishment by Beck could have been considered by the trial court to be voluntary on her part. Accordingly, there was some evidence that Walker was entitled to the affirmative defense of voluntary relinquishment and an offset of $350 per month for twelve months, for a total of $4,200.
 
 *891
 

 See
 
 Tex. Fam.Code Ann. § 157.008(a), (b), (d), & (e).
 

 Relying on
 
 Curtis,
 
 11 S.W.3d at 474, and
 
 Buzbee,
 
 870 S.W.2d at 341, Beck argues that Walker was nevertheless required to provide some evidence of his expenditures on T.B. during this period. We disagree.
 

 In
 
 Curtis,
 
 the Tyler Court of Appeals held that to receive a credit against the arrearage, the obligor must provide the court with “some evidence of his expenditures on the child.”
 
 Curtis,
 
 11 S.W.3d at 473 (quoting
 
 Buzbee,
 
 870 S.W.2d at 341). In
 
 Buzbee,
 
 the Waco Court of Appeals, interpreting section 14.41(c) of the family code, the predecessor statute of section 157.008(e), held that the plain language of section 14.41(e) provided that the party claiming its benefits “must prove (1) that he had possession of the child for periods in excess of the court-ordered periods of possession (2) during which he incurred expenses for actual support of the child.”
 
 Buzbee,
 
 870 S.W.2d at 340-41.
 
 [4]
 

 However, as explained by the Corpus Christi Court of Appeals in
 
 In re A.M.,
 
 101 S.W.3d 480, 487-88(Tex.App.-Corpus Christi 2002, pet. filed),
 
 Curtis
 
 relied on cases, including
 
 Buzbee,
 
 that were decided before the recodification of the family code in which section 157.008(e) was enacted and its predecessor statute, section 14.41(c), was repealed. The Corpus Christi Court of Appeals rejected the rationale of
 
 Curtis,
 
 and, by extension,
 
 Buzbee,
 
 on grounds that statutory language of section 14.41(c) was omitted and that an obligor who gained possession of a child was under no more obligation to file ac-countings to show money spent for actual support than was the obligee. M
 
 [5]
 
 The plain language of section 158.008 does not require evidence of the obligor’s expenditures on the child.
 
 See Fitzgerald v. Advanced Spine Fixation Sys., Inc.,
 
 996 S.W.2d 864, 865 (Tex.1999) (“If the meaning of the statutory language is unambiguous, we adopt, with few exceptions, the interpretation supported by the plain meaning of the provision’s words and terms.”). We are persuaded by the reasoning of the Corpus Christi Court of Appeals in
 
 In re A.M.
 
 and decline to follow
 
 Curtis
 
 and
 
 Buzbee.
 
 Accordingly, we reject Beck’s argument that Walker was required to provide some evidence of his expenditures on T.B. to be entitled to an offset. We resolve Beck’s fourth issue against her to this extent.
 

 In addition to the $4,200 offset or credit discussed above, Walker testified that Beck owed him $3,150, as detailed above. Walker refers to these amounts as “equitable offsets.” Beck’s fourth issue states, “Did the trial court abuse its discretion ... by awarding an offset or counterclaim for matters not authorized by the
 
 *892
 
 Texas Family Code?” We agree that these amounts are not expressly authorized by subchapter F of chapter 157 of the family code.
 
 See
 
 Tex. Fam.Code Ann. § 157.262(f) (“The money judgment for arrearage rendered by the court may be subject to a counterclaim or offset
 
 as provided, by this subchapter.”)
 
 (emphasis added). Nor are they expressly authorized by section 157.008, which provides for the affirmative defense of voluntary relinquishment and reimbursement as an offset of counterclaim for actual support provided during a time subject to an affirmative defense.
 
 See id.
 
 § 157.008(a), (d).
 

 In
 
 Stevens,
 
 84 S.W.3d at 723-24, the Houston First Court of Appeals considered whether a Social Security payment to a child was a proper credit towards child support arrearage to which the parent was entitled “as a matter of equity and law.” That court analyzed the language of sections 157.262 and 158.008 and determined that “counterclaims and offsets must be found exclusively in the [family] code.”
 
 Id.
 
 at 724. The Houston First Court of Appeals declined to follow case law permitting Social Security payments to be credited toward satisfaction of court-ordered child support payments.
 
 [6]
 
 The Houston First Court of Appeals’s overriding consideration was “the binding provisions” of the family code.
 
 Id.
 
 at 725. That court also determined that equitable factors favored the denial of the credit. Specifically, payment of arrearage serves two purposes: (1) fulfilling a previously unfulfilled duty to the child, and (2) reimbursing the custodial parent for extra resources expended to support the child.
 
 Id.
 
 “Giving credit to Stevens for a Social Security dependent’s disability payment made directly to his adult son may arguably serve the first purpose, but it ignores the second.”
 
 Id.
 

 Applying the reasoning of the Houston First Court of Appeals to the attorney’s fees and expenses here, we conclude that they are not “actual support” provided for by section 158.008 and do not serve either purpose stated by
 
 Stevens.
 
 Accordingly, we conclude that any consideration of these amounts as an “equitable offset” was an abuse of discretion. We resolve Beck’s fourth issue in her favor to the extent that $3,150 ordered by the Georgia and Tennessee courts were considered by the trial court as an offset or counterclaim.
 

 C. Child Support
 

 In her third issue, Beck contends the trial court should have awarded her reimbursement for amounts of child support she paid Walker under a void Tennessee court order.
 

 Beck contends that because all Tennessee court orders were voided, Walker’s child support obligation to her continued as if uninterrupted and that she should be reimbursed for her support payments to him. As to Walker’s child support obligation, that issue is addressed above in our discussion of arrears. However, Beck’s claim for payments made by her is not a claim to enforce child support arrearage under chapter 157.
 
 See
 
 Tex. Fam.Code Ann. § 157.001(a) (Vernon 2002) (defining “motion for enforcement as provided in the chapter” as motion “to enforce a final order for conservatorship, child support, possession of or access to a child, or other provisions of a final order”). Indeed, Beck does not cite chapter 157 or any other authority to support her argument.
 

 Walker responds that the trial court could have found that Beck was not entitled to reimbursement of the payments she made under the Tennessee orders because
 
 *893
 
 she had a duty to support T.B. even when he was in Walker’s possession. This obligation is based on a parent’s duty to support her child, regardless of whether the parent is under a court order to support the child.
 
 See id.
 
 § 151.001(a)(3);
 
 In re B.T.,
 
 954 S.W.2d 44, 49 (Tex.App.-San Antonio 1997, pet. denied). Walker argues Beck’s duty to support T.B. is not negated by the fact that she paid support pursuant to a void order. In light of this authority, we conclude that Beck has not shown any abuse of discretion regarding reimbursement. We resolve Beck’s third issue against her.
 

 D. Health Insurance Expenses
 

 Beck’s second issue states, “Must the trial court award necessary medical expenses for the child if the obligor fails to provide health insurance as ordered under a valid court order?” Beck argues that Walker presented no evidence that he provided notice to her of health insurance coverage for 1998 through 2002. We assume for the sake of argument that the trial court impliedly found that Walker provided health insurance for T.B. as ordered in the 1997 Collin County order and thus was not responsible for health care expenses incurred by Beck.
 

 1. Applicable Law
 

 Section 154.188 of the family code provides that “[a] parent ordered to provide health insurance who fails to do so is hable for: (1) necessary medical expenses of the child, without regard to whether the expenses would have been paid if health insurance had been provided; and (2) the cost of health insurance premiums or contributions, if any, paid on behalf of the child.” Tex. Fam.Code Ann. § 154.188 (Vernon 2002).
 

 2. Discussion
 

 As detailed above, there was some evidence supporting the trial court’s implied finding that Walker provided health insurance for T.B. from 1997 through 2002, informed Beck of the coverage, and therefore was not liable for health expenses or premiums under section 154.188. Accordingly, we resolve Beck’s second issue against her.
 

 ATTORNEY’S FEES
 

 In her fifth issue, Beck contends the award of $1,050 is an abuse of discretion and against the great weight of the evidence. She argues she should have received twenty-five pex-cent of the full amount of arrearage she proved ($13,-949.32), not after any offset or counterclaim, or $3,487.33. She also contends that awarding a percentage fee based on an inaccurate judgment amount because of failure to apply the law properly in determining the judgment amount was arbitrary or unreasonable.
 

 Section 157.167(a) of the family code provides for the payment of the mov-ant’s reasonable attorney’s fees in addition to arrearage when the court finds that the respondent has failed to make child support payments. Tex. Fam.Code Ann. § 157.167(a) (Vernon Supp.2004-05). Whether to award attorney’s fees pursuant to the family code is within the discretion of the trial court.
 
 See Rinehold v. Rinehold,
 
 790 S.W.2d 404, 407 (Tex.App.-Houston [14th Dist.] 1990, no writ) (interpreting predecessor statute, section 14.33(b)),
 
 disapproved of on other grounds by Bruni v. Bruni,
 
 924 S.W.2d 366, 368 (Tex.1996).
 

 We have rejected Beck’s arguments that she proved $13,949.32 in arrears as a matter of law and the trial court should have confirmed a judgment for $13,949.32 in child support arrears. Moreover, Beck cites no authority to support her argument that the attorney’s fees should have been awarded on an amount other than the judgment, that is, on the
 
 *894
 
 amount of arrears, without taking into consideration any offsets or counterclaims. Accordingly, we reject Beck’s argument that attorney’s fees of twenty-five percent of this amount should have been awarded.
 

 In her argument regarding attorney’s fees as a percentage of judgment, despite citing the standard for factual sufficiency, Beck contends that “[t]he award of attorney’s fees should be ordered in a minimum amount of $3,487.33 or at the hourly rate testified to by Movant’s attorney, being $4,995.” Nevertheless, we have agreed with Beck’s argument that the judgment amount is improper because the trial court impliedly included offsets not allowed by the family code. Therefore, in the interest of justice, we resolve Beck’s fifth issue in her favor to the extent we conclude that the amount of attorney’s fees impliedly found by the trial court was awarded on an inaccurate judgment amount.
 

 CONCLUSION
 

 Because of our disposition of Beck’s fourth issue, we reverse that part of the trial court’s order granting judgment on a child support obligation ordering judgment for child support arrears and render judgment that the total amount due is $7,350 ($4,200 plus $3,150). Because of our disposition of Beck’s fifth issue, we reverse the amount found by the trial court as reasonable attorney’s fees and remand this issue to the trial court for further proceedings.
 

 [1]
 

 . The record shows that T.B. graduated from high school in 2002, and that his eighteenth birthday was July 10, 2002.
 

 [2]
 

 . Beck asked the trial court to take judicial notice of the order, and the trial court did so. The order was not offered as an exhibit. It is not found in the record on appeal. The court reporter’s certificate states that the reporter’s record contains "all portions of evidence and other proceedings requested in writing by counsel ...” and "reflects the exhibits, if any, offered by the respective parties.” The record does not show that Beck designated the judicially noticed order be included in the reporter’s record.
 
 See
 
 Tex.R.App. P. 34.6(b)(1) (providing that appellant's written request for preparation of the reporter’s record "must designate the exhibits to be included”). Beck included the full text of the order as an appendix to her brief. The attachment of a document as an exhibit or appendix to a brief is not formal inclusion in the record on appeal and, thus, the document cannot be considered.
 
 See Perry v. Kroger Stores Store No. 119,
 
 741 S.W.2d 533, 534 (Tex.App.-Dallas 1987, no writ);
 
 see also Sabine Offshore Serv., Inc. v. City of Port Arthur,
 
 595 S.W.2d 840, 841 (Tex.1979) (per curiam) (matters outside record cannot be considered by appellate court for any purpose other than determining its own jurisdiction);
 
 Kaman v. State,
 
 923 S.W.2d 129, 131-32 (Tex.App.-Houston [1st Dist] 1996, no pet.) (outlining method for including judicially noticed document in record on appeal). However, the order is quoted in part in Beck’s motion to modify and in the order granting judgment on a child support obligation, which do appear in the record on appeal. Accordingly, we consider only that part of the order that appears in these documents.
 

 [3]
 

 . Walker did not plead a statutory counterclaim or offset or the out-of-state awards, which he calls “equitable offsets.” In addition, Beck did not plead that she was entitled to reimbursement for child support. Neither party amended its pleadings to include these claims. However, the parties offered evidence on these claims without objection. Accordingly, we conclude these claims were tried by implied consent.
 
 See
 
 Tex.R. Civ. P. 67 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.”);
 
 RE/MAX of Tex., Inc. v. Katar Corp.,
 
 961 S.W.2d 324, 328 (Tex.App.-Houston [1st Dist.] 1997) ("To determine whether the issue was tried by consent, the Court must examine the record not for evidence of the issue, but rather for evidence of trial of the issue.”),
 
 pet. denied,
 
 989 S.W.2d 363 (Tex.1999).
 

 [4]
 

 . Section 14.41(c) read:
 

 Possession of Child by Obligor. If the managing conservator has voluntarily relinquished to the obligor the actual care, control, and possession of a child for a time period in excess of the court-ordered periods of possession of and access to the child,
 
 the child support order continues unabated until further order of the court
 
 as provided by Section 14.08 of this code. However, an obligor who has provided actual support to the child during such time periods may seek reimbursement for that support as a counterclaim or offset against the claim of the managing conservator. An action against the managing conservator for support supplied to a child shall be limited to the amount of periodic payments previously ordered by the court.
 

 Act of May 27, 1985, 69th Legis., R.S., ch. 232, § 9, 1985 Tex. Gen. Laws 1158, 1163 (emphasis added),
 
 repealed by
 
 Act of April 6, 1995, 74th Leg., R.S., ch. 20 § 2(1), 1995 Tex. Gen. Laws 113, 282.
 

 [5]
 

 . The Corpus Christi Court of Appeals noted that the language emphasized in footnote 4 was omitted.
 
 Id.
 
 at 487.
 

 [6]
 

 . See In re Rich,
 
 993 S.W.2d 272 (Tex.App.-San Antonio 1999, no pet.);
 
 In re Allsup,
 
 926 S.W.2d 323 (Tex.App.-Texarkana 1996, no writ).