**Opinion issued March 21, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00192-CV

————————————

**IRVIN WHITE, Appellant**

**V.**

**ANGELA STANLEE WHITE AND THE OFFICE OF THE ATTORNEY GENERAL OF TEXAS, Appellees**

On Appeal from the 246th District Court
Harris County, Texas
Trial Court Case No. 2010-52722

## MEMORANDUM OPINION

Appellant Irvin White appeals the trial court's calculation of child support arrearages. We affirm.

## BACKGROUND

On August 3, 1999, a trial court in Fort Bend County entered Final Decree of Divorce providing, among other things, that appellee Angela White have the right to determine the primary residence of the parties' minor children, MDW and MAW, and that appellant Irvin White pay to Angela $680 in monthly child support.

On July 16, 2004, Angela relinquished possession of the children to Irvin, and Temporary Orders were entered memorializing the parties' agreement that Angela would pay Irvin $1 per month in child support. In July 2006, unbeknownst to the parties, the Temporary Order was dismissed for want of prosecution. MDW and MAW continued living with Irvin until November 6, 2007, when they moved back in with Angela. They have remained with Angela since.

Irvin did not resume paying Angela child support until around February 2010. Irvin testified that he did not realize he had an obligation to pay support during this period because the last order (i.e., the Temporary Order that the parties believed was still in effect) did not obligate him to.

### A. The Motion to Modify

In 2010, the Office of Attorney General (OAG) filed a Suit for Modification of Support Order and Motion to Confirm Support Arrearage. That motion sought a judgment for $37,533.22 in total arrearages and interest.

2

On November 3, 2011, there was a hearing on the OAG's motion and on Irvin's request for an offset of his child support obligation related to the time that the children lived with him. The parties agreed about the dates that the children lived with each party, but disagreed about what offset Irvin was entitled to.

While he never quantified with specific dollar amounts, Irvin testified that all of his expenses went up while his children lived with him, including utilities, clothing, and transportation. The State objected to the relevance of the testimony, arguing that while Temporary Orders were in place, Angela was obligated to pay support and the law only allows an offset for an obligor, not an obligee.

Irvin's counsel clarified that he was "claiming a credit for the time from July 2006 until November 2007, when there was no Order for mom to pay a dollar in child support." The OAG's counsel responded: "And the State would stipulate . . . . I think everybody agreed, while these children were living with the father, two teenage girls are expensive. And he spent money on them."

Finally, there was testimony that Irvin had paid some support directly to Angela that was not reflected in the OAG's records. Angela agreed that she received these payments.

**B. The Court's Oral Pronouncement**

After hearing testimony, the trial court's oral pronouncement of its ruling contained some inconsistencies about dates, but ultimately the court clarified that it

would sign an order that Irvin "had no obligation for two years," i.e., July 2004–July 2006, and then "offset possession credits . . . for up until 2007." The court also stated that it found Irvin believed in good faith that the Temporary Orders gave him custody, even after they were dismissed, so Irvin should get "credit for that period of time that the children were with him."

### C. The Judgment

On January 13, 2012, the court signed an order that increased Irvin's support obligation to $850.00 per month, and calculated total arrearages of $17,683.22. With regard to the Irvin's offset claim, it provided in pertinent part:

> It is found that IRVIN STANLEY WHITE had possession of the subject children from July 16, 2004, through November 8, 2007. It is ORDERED that IRVIN STANLEY WHITE does not owe child support for the period of time from July 16, 2004, through November 8, 2007.

The portion of the judgment calculating arrearages states that it is "inclusive of the above referenced possession credits."

### ISSUE ON APPEAL

Irvin challenges the trial court's judgment in one issue:

The trial court erred in denying the Appellant's offset as the obligor parent when he is entitled to an offset or to reimbursement when Appellant as a parent who provided excess expenses and obligations during all or part of the periods of excess possession of his minor children.

4

## APPLICABLE LAW

A trial court's decision to grant or deny the relief requested in a motion for enforcement is reviewed for an abuse of discretion. *See Beck v. Walker*, 154 S.W.3d 895, 901 (Tex. App.—Dallas 2005, no pet.); *In re T.J.L.*, 97 S.W.3d 257, 265 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

In calculating child support arrearages, the trial court's discretion is limited. *See Attorney Gen. v. Stevens*, 84 S.W.3d 720, 723 (Tex. App.—Houston [1st Dist.] 2002, no pet.). A trial court "may not reduce or modify the amount of child support arrearages" except as specifically provided in the Family Code. TEX. FAM. CODE ANN. § 157.262(a) (Vernon 2008); *see also Beck*, 154 S.W.3d at 903. The trial court "acts as a mere scrivener in mechanically tallying up the amount of arrearage." *Lewis v. Lewis*, 853 S.W.2d 850, 854 (Tex. App.—Houston [14th Dist.] 1993, no writ). Although the trial court can award certain offsets and credits, the trial court has no discretion to forgive or decrease a past child support obligation. *See* TEX. FAM. CODE ANN. § 157.262(a); *George v. Jeppeson*, 238 S.W.3d 463, 472 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

The Texas Family Code permits the trial court to take into account, when calculating child support arrearages, support provided by the obligor during times that the obligor had possession of a child in excess of the court-ordered periods of possession.

**§ 157.008. Affirmative Defense to Motion for Enforcement of Child Support**

(a) An obligor may plead as an affirmative defense in whole or in part to a motion for enforcement of child support that the obligee voluntarily relinquished to the obligor actual possession and control of a child.

(b) The voluntary relinquishment must have been for a time period in excess of any court-ordered periods of possession of and access to the child and actual support must have been supplied by the obligor.

. . . .

(d) An obligor who has provided actual support to the child during a time subject to an affirmative defense under this section may request reimbursement for that support as a counterclaim or offset against the claim of the obligee.

. . . .

(e) An action against the obligee for support supplied to a child is limited to the amount of periodic payments previously ordered by the court.

TEX. FAM. CODE. ANN. § 157.008.

"[T]he legislature's intent, as expressed by the language used in Family Code section 157.008, appears aimed at allowing the trial judge the discretion to deny enforcement of an arrearage claim where the obligor proves he has provided actual support and the obligee has voluntarily relinquished the child 'for a time period in excess of any court-ordered periods of possession of and access to the child . . . .'" *In re W.J.B.*, 294 S.W.3d 873, 883 (Tex. App.—Beaumont 2009, no pet.).

6

## ANALYSIS

The parties agree that Irvin had possession of the children from July 2004 to November 2007. They also agree that for the first two years of that period—July 2004 through July 2006—Temporary Orders were in place obligating Angela to pay $1 to Irvin per month in child support. Finally, it is undisputed that the Temporary Orders were dismissed in July 2006, which effectively reinstated Irvin's $680 monthly child support obligation under the parties' divorce degree in August 2006, despite the children remaining in his possession until November 2007.

Irvin argues that the trial court erred by "rendering judgment confirming arrearage to the [Angela] without allowing [Irvin] his offset claim as pled and proved at trial." The OAG argues that Irvin was not entitled to a claim of offset for the period of time that the Temporary Orders were in place (i.e., July 2004–July 2006), and that Irvin was awarded the maximum available offset for the remaining time the children were in his possession (i.e., August 2006–November 2007). We agree.

The Texas Supreme Court has considered the very issue we are presented with here. *In re A.M.*, 192 S.W.3d 570, 574 (Tex. 2006). In *A.M.*, the parties' divorce decree awarded custody of the parties' two children to the mother, and the father was ordered to make monthly child support payments of $450. *Id.* at 572.

Father filed a motion to modify custody in December 1985, and from December 1985 through June 1988 mother relinquished possession of the children to father. *Id*. The motion to modify custody was never ruled on, and was eventually dismissed for want of prosecution. *Id*. Mother later again relinquished possession of their older child, who remained with father until he reached the age of emancipation. *Id*.

The OAG sued father to recover unpaid child support owed to mother. *Id*. Father claimed that mother "had voluntarily relinquished control of the children for periods exceeding of court-ordered visitation and that he was therefore entitled to an offset against the [AOG]'s claim under section 157.008." *Id*. at 573. Father also sought "reimbursement from [mother] for support he provided during the periods of excess possession." *Id*.

The trial court awarded to father both offsets and reimbursement for the periods of excess possession. *Id*. at 573 & n.2. For the period from December 1985 through June 1988 that father had possession of both children, the trial court awarded him a $450 a month offset against his $450 a month child support obligation, and then awarded to father an additional $450 per month reimbursement. *Id*. at 573 n.2. For the period that only one child lived with father, the trial court awarded to father an offset of $450 a month against his $450 a

8

month child support obligation and an additional $46.18 per month in reimbursement. *Id*.

The AOG appealed, arguing that section 157.008 of the Texas Family Code did not allow father to recover "both a credit and affirmative reimbursement for each month of excess possession." *Id*. at 573. The supreme court agreed, reasoning that accepting the trial court's construction of section 157.008 "actually operates to shift the court-ordered support obligation from the obligor to the obliger during voluntarily periods of excess possession." *Id*. at 574. Thus the court held it was error to treat the offset and reimbursement remedies as cumulative rather than alternative:

> Whether an obligor parent is entitled to an offset or to reimbursement will depend on whether such parent continued to pay the court-ordered support obligation during all or part of the period of excess possession. If support was paid during this period, the obligor must seek reimbursement; if it was not, the obligor must ask for an offset. In either event, section 157.008's reimbursement remedies of offset or counterclaim are alternative, not cumulative. During any particular month, the obligor may be entitled to one or the other, but not both . . . . Moreover, the statute is purely defensive. It does not grant the obligor an independent right to seek reimbursement for support paid during periods of excess possession, but rather provides for reimbursement "against the claim of the obligee." *Id*. § 157.008(d).

*Id*.

The trial court in this case properly applied section 157.008. The trial court's order recognizes that Irvin had "possession of the subject children from July 16, 2004 through November 8, 2007" and orders that Irvin "does not owe

child support for the period of time from July 16, 2004, through November 8, 2007."

During the period from July 2004 through July 2006, Irvin does not owe child support because he became the obligee under the Temporary Orders, during which time Angela was the obligor who was required to pay to Irvin $1 a month. Section 157.008 has no application to that period, as it only provides an *obligor* an offset or reimbursement claim. TEX. FAM. CODE ANN. § 157.008 (a) ("An obligor may plead as an affirmative defense . . ."); *Id.* § 157.008 ("An obligor who has provided actual support . . ."). The trial court's order recognizing that Irvin did not owe child support from July 2004 through July 2006 is consistent with the Temporary Orders and that time period is not subject to any offset or reimbursement claim under section 157.008.

During the remaining period of excess possession from August 2006 through November 2007, Irvin was obligated under the parties' divorce decree to pay $680 per month—despite the children remaining in his possession—because the Temporary Orders providing otherwise had been dismissed. But, by providing in its order that Irvin "does not owe child support" for that period, the trial court awarded Irvin a complete offset of his $680 obligation for that period under section 157.008. The order confirms that the final arrearage judgment is inclusive of these

"possession credits." The order provides the maximum relief Irvin could receive under section 157.008.

Because we conclude that the trial court correctly applied section 157.008, we overrule Irvin's sole issue.

## CONCLUSION

We affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.