**AFFIRM; Opinion Filed July 31, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01290-CV

### IN THE INTEREST OF J.C.T AND L.D.T, CHILDREN

**On Appeal from the 256th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-82-17818**

## MEMORANDUM OPINION

Before Justices O'Neill, Myers, and Brown
Opinion by Justice Brown

Linda May Pryor appeals the trial court's orders terminating a writ of withholding for past due child support issued against her ex-husband, Billy Coy Taylor, and terminating a notice of levy to Taylor's financial institutions. In three issues, Pryor challenges the trial court's jurisdiction over the case and its finding that Taylor had paid all child support due and owing. We affirm.

Pryor and Taylor divorced in 1983. The divorce decree ordered Taylor to pay $300 per month in child support for the couple's two children, Jason and Leslie, ages three and eight months, until both children reached the age of eighteen. Further, the payments were to be made through the Dallas County Child Support Office.

In August 2011, more than eleven years after Taylor's obligations ended, the Office of the Attorney General issued an administrative writ of withholding directing Taylor's employer to withhold $1005 monthly from his wages for payment of a child support arrearage of $95,006,

including interest. Taylor filed a motion to terminate the writ in the family court where the divorce was rendered, asserting he had made all payments due under the decree and requesting attorney's fees. The AG's office filed an answer. Thereafter, Pryor filed notices of child support liens in two counties against Taylor and a notice of levy to Taylor's financial institution. After these filings, Taylor also sought to terminate the notice of levy.

A trial was held in April 2012 on Taylor's motions to terminate the writ of withholding and notice of levy. Taylor and Pryor were represented by counsel, and an assistant attorney general also made an appearance. The AG's record showed that Taylor ceased making payments through the child support office at the end of 1989. Taylor explained he began paying Pryor directly at that time so that Pryor would receive her money earlier in the month. Taylor said he and Pryor got along at the time, and Pryor wanted the money on the first of the month. When Taylor paid through the child support office as ordered under the decree, Pryor would not receive her money for two to three weeks. Taylor said he made the payments by mail or in person, and every payment was made. At times, his wife, Vickie, made the payments.

Taylor acknowledged there was a brief period, shortly after the divorce, when he stopped making payments. In response, Pryor refused to let him see the children and took him back to court, where he was ordered to pay the back child support and Pryor's attorney's fees. Taylor said he learned his lesson from that experience and made all subsequent payments. Over the next several years, he said Pryor never withheld the children from him, which he suggested was further evidence that he made timely payments. In fact, he said he had custody of the children at various times and still paid child support to Pryor. When he made his final payment in June 2000, he said he wrote "last one" on the memo portion of the check and showed Vickie and his stepson, Cody. He celebrated the next day by purchasing a motorcycle. Taylor said he kept

copies of his canceled checks until July 2010, when he moved into a new home and destroyed his old records.

In August 2011, he learned from his employer that a writ of withholding had issued for past due child support. Taylor contacted the AG's office and talked with a representative. He told the representative that he had made all the child support payments but could not provide documentary proof. He explained that he kept his canceled checks and other proof of payment when he was under the court order, but he destroyed the records after ten or twelve years and no longer had them. Two weeks after the writ issued, he filed his motion to terminate the writ in district court.

Taylor's wife Vickie, stepson Cody Frazier, and son Jason Taylor all testified on his behalf. Vickie testified she had "no doubts" that every single child support payment was made. She said either she or her husband made the payments. From 1989 to 1993, she said Taylor was traveling worldwide and would be gone for two to three months at a time. During that period, she wrote the checks directly to Pryor and sometimes paid her in person. Vickie said they agreed to pay Pryor directly and not through the child support office. Pryor never complained that she was not receiving child support nor did she ever prevent the children from visiting with them. Cody testified he remembered two or three occasions, during 1990 to 1996, when Pryor came to the house and he handed her the check. There were other times, he said, when his parents delivered the check to Pryor when they were picking up the children for visitation. Both Vickie and Cody remembered seeing the final child support check and Taylor's notation on it. Jason testified he remembered going with his mother to pick up child support payments from his father.

In contrast to the above testimony, Pryor testified Taylor had not made all of the child support payments. She said that of the payments shown missing on the AG's report, Taylor had made only a handful of either full or partial payments. She said she had not complained over the

–3–

past twenty-plus years (from the initial date Taylor allegedly stopped making payments) because she does not complain "about a lot of anything." She also said she could not afford an attorney. According to Pryor, the AG's office contacted her in April 2011 after she filled out an application on a website about "who owes you money or you're owed money in the State of Texas." She did not remember the name of the website. She said the AG representative asked if she knew she was entitled to back child support, and she said yes. The AG representative said "we will take care of it."

After hearing the evidence, the trial court found, based on the credible evidence, that Taylor had made all of his child support payments. The trial court granted Taylor's motions to terminate the writ of withholding and to terminate the notice of levy to financial institutions. This appeal ensued.

We begin with Pryor's second issue in which she contends the trial court did not have jurisdiction over the motion to terminate the writ of withholding because Taylor did not first exhaust his administrative remedies under section 158.506 of the Texas Family Code.[1]

Section 158.506 addresses contests by an obligor of an administrative writ of withholding. It provides that an obligor who receives notice of the writ "may request a review by the Title IV-D agency to resolve any issue in dispute regarding the identity of the obligor or the existence or amount of arrearages." TEX. FAM. CODE ANN. § 158.506(a) (West 2014). The office of the attorney general is designated as the state's Title IV-D agency. *Id*. § 231.001 (West 2014). The AG shall provide an opportunity for a review, by telephonic conference or in person, "as may be appropriate under the circumstances." *Id*. § 158.506(a). After a review, the AG may issue a new administrative writ of withholding to the employer, including a writ modifying the

---

[1] We received an amicus curiae brief from the AG's office in which the AG also argued that (1) section 158.506 required Taylor to exhaust his administrative remedies before seeking relief from the court and (2) Taylor failed to do so.

amount to be withheld or terminating the withholding. *See id*. § 158.506(b). If a review under section 158.506 fails to resolve any issue in dispute, "the obligor may file a motion with the court to withdraw the administrative writ of withholding and request a hearing" not later than the 30th day after receiving notice of the AG's determination. *Id*. § 158.506(c).

We need not address Pryor's argument that section 158.506 provides an "administrative remedy" that must be exhausted before an obligor can resort to a court, or whether this section provides the exclusive method for challenging an administrative writ of withholding. Assuming without deciding that Pryor is correct, we conclude Taylor did so.

The evidence shows that after Taylor's employer notified him of the writ, Taylor met with the AG representative by telephone. *See id.* § 158.506(a). He told the representative that he had made all payments and further explained that he had no documentary proof because he got rid of the records ten or twelve years after his obligation ended. The AG did not modify the amount of the writ or withdraw it, and Taylor filed his motion within two weeks of meeting with the AG. We conclude this evidence showed that Taylor substantially complied with section 158.506.[2]

In reaching this conclusion, we are persuaded by our sister court's opinion under similar circumstances. *See In re A.C.B.*, 103 S.W.3d 570, 574 (Tex. App.—San Antonio 2003, no pet.). There, the evidence showed the obligor met in person with the AG's representative and presented hand-written receipts signed by his former wife to prove he made payments. *Id*. at 573. The AG representative told the obligor that "only a judge could say that [the receipts] were valid." *Id*. The court concluded the obligor substantially complied with section 158.506. *Id.* at 574. We overrule Pryor's second issue.

---

[2] To the extent there are gaps in the evidence regarding the full meeting between the AG's representative and Taylor, the AG's office must shoulder some of the blame. On cross-examination by Pryor's counsel, when Taylor attempted to describe what he had been told by the AG's representative, the assistant AG objected on hearsay and attorney-client privilege grounds and the matter was not further developed.

In her first issue, Pryor argues the evidence is legally and factually insufficient to support the trial court's finding that Taylor paid all child support due and owing under the parties' divorce decree.

Most appealable issues in a family law case are evaluated under an abuse of discretion standard. *In re C.G.*, 261 S.W.3d 842, 848 (Tex. App.—Dallas 2008, no pet.). We reverse a trial court's judgment only when it appears from the record as a whole that the trial court abused its discretion. *Beck v. Walker*, 154 S.W.3d 895, 901 (Tex. App.—Dallas 2005, no pet.). The trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *In re C.G.*, 261 S.W.3d at 848. In family law cases, the abuse of discretion standard overlaps with the traditional sufficiency standards of review; as a result, legal and factual sufficiency are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.). To determine whether the trial court abused its discretion because the evidence is insufficient to support its decision, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in the exercise of that discretion. *Id*. We conduct the applicable sufficiency review with regard to the first question. *Id*. In a nonjury trial, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Beck*, 154 S.W.3d at 901.

Pryor argues the trial court's finding that Taylor made all payments was not supported by the record. For the most part, she relies on her testimony and the AG's record showing payments to the child support office ceased in 1989 as well as Taylor's inability to provide any documentary proof that he made the payments. However, Taylor testified he made all the payments directly to Pryor so that she would have the money earlier because the child support office took two to three weeks to process the checks. He testified he remembered the last

payment made, making a notation on the check, and showing it to his wife and stepson. Taylor also explained that he kept documentary proof for ten or twelve years after his obligation ended, but destroyed the records when he moved into a new home in July 2010. Taylor's wife, stepson, and son corroborated Taylor's testimony that he made at least some direct payments to Pryor and remembered him making the last payment. Moreover, Taylor testified he had learned his lesson about nonpayment in a contempt proceeding shortly after the divorce in 1983. As a result of that proceeding, he paid the back child support as well as Pryor's attorney's fees.

Pryor testified she did not complain about the nonpayment of child support for twenty-two years because she could not afford an attorney, although evidence suggested she would have been aware that her attorney's fees would be paid if she showed nonpayment. In fact, the evidence showed that Pryor knew how to seek relief from the courts if she was not receiving her court-ordered child support. She brought this action after filling out an application online through a website that checks to see if a person is owed money from any source and then receiving a call from the AG's office. And while she denied receiving all payments, she did acknowledge that Taylor made at least some direct payments to her. The trial court was the judge of the witnesses' credibility and apparently believed Taylor and his witnesses. Having considered the evidence, we conclude there was sufficient evidence for the trial court to exercise its discretion on the issue of Taylor's payments and the court did not err in determining Taylor had made the payments. We overrule Pryor's first issue.

In her third issue, Pryor contends that even if the evidence supports an implied finding that there was an agreement for Taylor to pay Pryor directly and Taylor made the payments, such an agreement is unenforceable as a matter of public policy. As support, she relies on *Williams v. Patton*, 821 S.W.2d 141, 143–44 (Tex. 1991), and *Chenault v. Banks*, 296 S.W.3d 186 (Tex. App.—Houston [14th Dist.] 2009, no pet). Both cases are distinguishable.

In *Williams*, the court concluded that parents could not settle a claim for child support arrearages for less than what was owed. 821 S.W.2d at 141–42. In *Chenault*, the court determined the trial court abused its discretion to the extent it gave a child support credit for the amount father paid for the child's private school tuition. 296 S.W.3d at 190. Here, the parties did not settle a claim for child support arrearage nor did the trial court give child support credit for an amount paid for another expense. Rather, the trial court found that Taylor had made all child support payments due under the divorce decree. A trial court may consider evidence of direct payments from the obligor to the obligee even when the divorce decree provides for the obligor to make payments through the court's registry. *In re C.S.*, No. 11-12-00294-CV, 2014 WL 972310, at *4 (Tex. App.—Eastland Mar. 6, 2014, no pet.) (mem. op.). Public policy does not require Taylor to duplicate those payments. We overrule Pryor's third issue.

We affirm the trial court's June 21, 2012 orders granting Motion to Terminate Notice of Levy to Financial Institutions and Motion to Terminate Writ of Withholding.


/Ada Brown/
ADA BROWN
JUSTICE


121290F.P05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

IN THE INTEREST OF J.C.T AND L.D.T, CHILDREN

No. 05-12-01290-CV          V.

On Appeal from the 256th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DF-82-17818.
Opinion delivered by Justice Brown.
Justices O'Neill and Myers participating.

In accordance with this Court's opinion of this date, the trial court's June 21, 2012 orders granting Motion to Terminate Notice of Levy to Financial Institutions and granting Motion to Terminate Writ of Withholding are **AFFIRMED**.

It is **ORDERED** that appellee Billy Coy Taylor recover his costs of this appeal from appellant Linda May Pryor.

Judgment entered this 31st day of July, 2014.