# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00731-CV

---

**Edgar Humberto Paez, Appellant**

**v.**

**Myriam Rodriguez, Appellee**

---

**FROM THE 480TH DISTRICT COURT OF WILLIAMSON COUNTY**
**NO. 23-1963-F480, THE HONORABLE RICK J. KENNON, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Edgar Humberto Paez appeals from the trial court's final decree of divorce.  By a single issue, he contends that the trial court erred by awarding appellee Myriam Rodriguez the marital residence.[1]  We affirm.

### I.       BACKGROUND

On July 18, 2023, Myriam filed for divorce from Edgar.  Edgar filed his answer in August 2023 and later a counterpetition for divorce in April 2024.  On July 1, 2024, the trial court held a final hearing.  Edgar, Myriam, and their adult daughter, Edith Paez, testified.

Myriam testified that the parties had been married for forty-seven years at the time of the final hearing.  Myriam asked to remain in the parties' home because she has "custody

---

[1] Because Edgar shares a surname with a witness, we refer to all individuals by their first names for ease of reference.

of [her] elder grandson." In addition, her "work has always been . . . babysitting and doing daycare for . . . children," and she needed "the house in order to be able to have a place to do [her] work." Myriam testified that she earned "25 or 30 per day" for each child she babysat and that she babysat around four children, not including her own grandchildren.

Myriam testified that Edgar often made comments along the lines of, "How I wish I was back in my homeland and not right here." Myriam would reply, "Well, what are you doing here? Go back to Col[o]mbia." Myriam testified that the last time Edgar returned from Colombia, "he wanted to sell the house and he wanted to sell all the things we had . . . disregarding the responsibilities that we have with our grandson, that we have custody of the grandson, and he didn't really care about that. He just wanted to sell everything and go back to Col[o]mbia." According to Myriam, a year prior to the final hearing, Edgar "[s]topped contributing to the expenses of the house." Myriam testified that the parties owed $111,000 on the house "[a]nd the value of the house is 300 and something." She also testified that she did not drive, spoke limited to no English, and was worried that without the house she "wouldn't be able to sustain [her]self or [her] grandson."

According to Myriam, she and Edgar shared a joint bank account with Chase, but at some point, "[t]here was a transfer of some $30,000 from that account," and she was not sure "where that money is or what happened to that money."

Edith testified that her parents' marriage had not been "respectful" and that there was physical as well as emotional violence. She believed Myriam decided to file for divorce because "she was tired of it." Edith testified that she wanted Myriam to be awarded the house because she thought Edgar had more opportunities to earn a stable living. Edith also testified that Myriam had custody of Edith's child and she wanted to "look[ out] for [her] son's welfare."

2

Edith explained that there were "[e]motional[]" ties to the home and for that reason, did not want her parents to sell it.

Edgar testified that Myriam was abusive towards him and had recently threatened him with a pair of scissors. He also testified that Myriam admitted to having an affair. Edgar requested that the court order the sale of the parties' residence after he had some time to make repairs to it. He also requested permission to live in the home until it sold.

Edgar's 2023 IRS Form 1040-SR was admitted into evidence and showed that his auto-wrecker business earned approximately $106,501 annually but had operating expenses of about $96,818. Edgar testified that he owned several vehicles as part of his business. According to Edgar, the 1970 Land Rover was worth about "22,000," one of the two 2007 Ford F-450s was worth about $20,000. He also testified that he recently sold a 1956 Volkswagen for $8,000. However, Edgar was uncertain of the value of the 1954 Willys Jeep. Edgar further testified that the business owed approximately $34,000 to the bank.

At the conclusion of the hearing, the trial court took the matter under advisement. On September 5, 2024, the trial court signed its final decree of divorce. In it, Edgar was awarded the bank accounts in his name, his towing business and associated debts, the 1970 Land Rover, the two 2007 Ford F-450s, and the 1954 Willys Jeep. Myriam was awarded the bank accounts in her name, the house and any associated debt, the household furniture and furnishings, her personal effects, and her childcare business. This appeal followed.

II.    STANDARD OF REVIEW & APPLICABLE LAW

In a divorce, the trial court is required to "order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each

3

party and any children of the marriage." Tex. Fam. Code § 7.001. We review a trial court's division of the community estate for an abuse of discretion. *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex. 1988); *Gonzales v. Gonzales*, 704 S.W.3d 54, 82 (Tex. App.—Austin 2024, no pet.).

Trial courts have wide discretion when making a just-and-right division. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998); *Gonzales*, 704 S.W.3d at 81. "To constitute an abuse of discretion, the property division must be manifestly unfair." *O'Carolan v. Hopper*, 414 S.W.3d 288, 311 (Tex. App.—Austin 2013, no pet.). "We presume on appeal that the trial court correctly exercised its discretion when dividing property in a divorce proceeding, and the appellant bears the burden to show from the record that the division was so disproportionate, and thus unfair, that it constitutes an abuse of discretion." *Id.*

### III. ANALYSIS

Edgar argues that the trial court "erred in awarding the home to [Myriam] because it did not grant the divorce on fault grounds." However, even when a divorce is not granted on fault-based grounds, "the community property need not be equally divided." *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981). "If there is a reasonable basis for an unequal division of the property in the record, the trial court has not abused its discretion." *Cyree v. Cyree*, No. 03-21-00319-CV, 2022 WL 17835215, at *3 (Tex. App.—Austin Dec. 22, 2022, no pet.) (mem. op.). A trial court is entitled to consider a host of factors in making a just and right division of the estate, including "the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages, size of separate estate, and the nature of the property." *Murff*, 615 S.W.2d at 699.

4

Myriam testified that she needed the house to have a steady source of income, whereas Edgar owned his own business. Edith also testified that she thought her father has a greater earning capacity than her mother. Myriam stated that she took care of the parties' grandson, and both she and her daughter thought it would be best for the child to remain in the home. Edgar testified that he wanted the trial court to order the sale of the property, but he did not provide any alternative plan for where his grandchild would live. The trial court was entitled to take these factors into consideration when dividing the parties' estate. *See id.*

Additionally, although the trial court granted the divorce on no-fault grounds, it could still consider Edith's testimony concerning the physical and emotional abuse she observed in her parents' marriage. *See Cyree*, 2022 WL 17835215, at *4 ("That the trial court granted the parties a no-fault divorce, however, is not inconsistent with and did not preclude it from considering William's admitted extramarital affair in its division of the marital estate."). Although Edgar also testified that Myriam had been abusive toward him, the trial court was not obligated to believe his testimony. *See Beck v. Walker*, 154 S.W.3d 895, 901 (Tex. App.—Dallas 2005, no pet.) ("[W]hen a fact finder is presented with conflicting evidence, it may believe one witness and disbelieve others."). And because the trial court did not issue any findings of fact or conclusions of law, we must presume that the trial court resolved any conflicts in the evidence in favor of its judgment. *See American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002).

Based on the record before us, Edgar has not sufficiently shown that the trial court's division of the community property was manifestly unfair. *See O'Carolan*, 414 S.W.3d at 311. Accordingly, we conclude that the trial court did not abuse its discretion in awarding Myriam the parties' residence. *See id.* We overrule Edgar's sole issue on appeal.

## IV.    CONCLUSION

We affirm the trial court's final decree of divorce.

_____

Maggie Ellis, Justice

Before Chief Justice Byrne, Justices Kelly and Ellis

Affirmed

Filed:   August 13, 2025